# UNITED STATES *v.* BERGH ET AL.

No. 17.   Argued October 15, 1956.—Decided November 19, 1956.

*Alan S. Rosenthal* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Doub* and *Samuel D. Slade.*

*Herbert S. Thatcher* argued the cause for respondents. With him on the brief were *J. Albert Woll* and *James A. Glenn.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This action was instituted in the United States Court of Claims by government per diem employees to recover holiday pay consisting of an extra day's compensation for each holiday worked during the year 1945.

Each of the respondents was employed by the Navy under a Schedule of Wages which provided that "whenever an employee is relieved or prevented from working solely because of the occurrence of any day declared a

holiday" he was to receive the same pay for such days as for other days. This language was taken from a Joint Resolution of Congress of June 29, 1938, 52 Stat. 1246,[1] having to do with holiday pay. In 1945 the respondents were not relieved from working on certain holidays named in this Resolution and were paid only the regular scheduled pay for the work performed on those days. They contend that under a Joint Resolution of January 6, 1885, 23 Stat. 516,[2] they have a vested right to an additional full day's wage as "gratuity pay" for each holiday worked. The Government urges that the 1885 Resolution was repealed *in toto* by the Joint Resolution of June 29, 1938,

---

[1] Joint Resolution of June 29, 1938, c. 818, 52 Stat. 1246, 5 U. S. C. § 86a:

". . . [W]henever regular employees of the Federal Government whose compensation is fixed at a rate per day, per hour, or on a piece-work basis are relieved or prevented from working solely because of the occurrence of a holiday such as New Year's Day, Washington's Birthday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, or any other day declared a holiday by Federal statute or Executive order, or any day on which the departments and establishments of the Government are closed by Executive order, they shall receive the same pay for such days as for other days on which an ordinary day's work is performed.

"SEC. 2. The joint resolution of January 6, 1885 (U. S. C., title 5, sec. 86), and all other laws inconsistent or in conflict with the provisions of this Act are hereby repealed to the extent of such inconsistency or conflict."

[2] 23 Stat. 516 (1885), as amended, 24 Stat. 644 (1887), 5 U. S. C. (1934 ed.) § 86, which provides:

". . . The employees of the Navy Yard, Government Printing Office, Bureau of Printing and Engraving, and all other per diem employees of the Government on duty at Washington, or elsewhere in the United States shall be allowed the following holidays, to wit: The 1st day of January, the 22d day of February, the day of each year which is celebrated as 'Memorial' or 'Decoration Day', the 4th day of July, the 25th day of December, and such days as may be designated by the President as days for national thanksgiving, and shall receive the same pay as on other days."

or in the alternative that the latter is inconsistent and in conflict with the provisions of the earlier Resolution upon which respondents rely.

The Court of Claims entered judgment for respondents, believing that the issue "was considered and disposed of by [its] majority opinion . . . in *Kelly* v. *United States,* 119 C. Cls. 197," holding that the employees concerned were entitled to gratuity pay under a Joint Resolution of 1895, not here involved, as well as under their wage agreement negotiated through collective bargaining in 1924. 132 Ct. Cl. 564, 132 F. Supp. 462. While we affirmed the *Kelly* case, 342 U. S. 193, it was on the basis of the wage agreement present there. We left open the issue involved here. Subsequently, thousands of claims based on the 1885 Resolution, including those of respondents, were filed against the Government, necessitating a decision on the question now presented. We granted certiorari, 350 U. S. 953.

The legislative history of the 1938 Resolution is clear. Executive Order No. 7763 of December 6, 1937, 2 Fed. Reg. 2685, excused all government employees from work on December 24, 1937. Under the 1885 Resolution per diem employees received no compensation for that day since the holidays enumerated therein did not include December 24. A Joint Resolution was introduced in the House by Representative Ramspeck to allow holiday pay to per diem employees for that day. On referral to the House Committee on Civil Sevice, advice was sought from the Civil Service Commission, the Bureau of the Budget, and the Comptroller General. The Civil Service Commission advised by letter dated February 15, 1938, that the "accounting authorities, however, have held that in the absence of specific legislation the regular employees of the Federal Government whose compensation is fixed at a rate per day, per hour, or on a piece-work basis lose pay for that day. This has resulted in discrimination

against these groups of Federal employees." The Commission advised, further, that "there is the broader question involved of securing statutory authority for such payments as a general practice . . . ." H. R. Rep. No. 2683, 75th Cong., 3d Sess. 2. The Commission suggested the language that might be inserted in a Resolution that "would give permanent statutory authority" for holiday pay. In addition, the Commission's reference to the "accounting authorities" revealed that the Comptroller General had advised the Secretary of the Navy on December 20, 1937, that under existing law (a) per annum employees suffered no loss of income as the result of holidays, whether declared by statute or executive order, whereas per diem employees received pay only for those holidays enumerated in the 1885 Resolution; (b) per diem employees received statutory holiday pay whether the holiday happened to fall on a nonwork day (Saturday or Sunday) or not, while per annum workers were allowed neither additional pay nor holiday time when the holiday happened to fall on a nonwork day; and (c) if a per diem employee worked on a statutory holiday falling on such a nonwork day, he received double pay.[3]

In its Report, *supra,* to the House, the Committee incorporated the letter from the Commission, the advisory opinion of the Comptroller General, and a letter dated February 14, 1938, from the Bureau of the Budget advising that the proposed legislation would not be "in conflict with the program of the President." The Committee drafted an entirely new Resolution, incorporating the language suggested by the Commission, intending for it to cover the "general practice" of the Government in regard to holiday pay. The only legislation then cover-

---

[3] This double pay resulted from interpretation of the 1885 Resolution by the office of the Comptroller of the Treasury. 13 Comp. Dec. 40. See also, 13 Comp. Gen. 295, 297.

ing the general practice of the Government as to holiday pay was the 1885 Resolution and as to it the Committee categorically declared in its Report:

"Section 2 [of the Resolution] proposes to repeal the joint resolution of January 6, 1885 (U. S. C., title 5, sec. 86), which is as follows: . . ." [It then sets out in full the 1885 Resolution.]

Furthermore, there is no indication anywhere in its Report that any portion of the 1885 Resolution—much less any administrative practice thereunder—was to survive. In addition to this unequivocal statement that the purpose of the 1938 Resolution was to repeal the 1885 one, the Committee further revealed by its action under the Rules of the 75th Congress that it so intended. The Rules required a Committee reporting out a bill repealing an act or part thereof to include in its report the text of the act or part thereof proposed to be repealed. The Report here included the text of the 1885 Resolution *in toto*. On the other hand, if it was intended only that the 1885 Resolution be amended, the Rules required the Committee to insert in its report a comparative print of the part of the act which it proposed to be amended. Here no such comparative print was inserted.

Moreover, the few brief statements on the floor of the House show nothing to the contrary. Representative Ramspeck declared that the Resolution "gives the same right to per diem employees as to the regular monthly employees." Representative Rogers stated, "This simply prevents an unintentional discrimination." Nothing was said as to the 1885 Resolution, nor did anyone contend, contrary to the Committee Report, that it was not the intention to repeal it *in toto*. See 83 Cong. Rec. 9466–9467.

It is contended that the purpose of the 1938 Resolution was to increase the number of holidays for per diem

employees to include those allowed by executive order, but to leave intact the allowance of double pay for per diem employees who worked on the holidays specified in the 1885 Resolution. This cannot be correct, for no one contends that the 1938 Resolution did not repeal the 1885 Resolution, as interpreted, with reference to holiday pay on *nonwork* days. That being so, we cannot see why the 1885 Resolution should be regarded as having been left unrepealed with reference to holiday pay on *work* days.[4] Moreover, respondents' contention is entirely untenable in light of the Committee Report. Confusion would be created rather than eliminated if the contention were accepted. The purpose, as shown by the letters, the advisory opinion, the Report, and the statements on the floor of the House, was to alleviate discriminations as to holiday pay and to treat employees alike insofar as possible. This the 1938 Resolution accomplished. Should the respondents' interpretation prevail, it would result in a double standard of pay for per diem employees working on holidays. On those holidays included in the 1885 Resolution, the employees would receive double pay, while on holidays included in or created pursuant to the authority provided by the 1938 Resolution alone they would receive only single pay. This result is required because the 1938 Resolution permits no holiday pay when the employee is required to work. We cannot attribute such anomalous results to the Congress. It is urged that our interpretation would result in a per diem employee receiving the same pay for working on a holiday as is

---

[4] It is true that the Comptroller General's 1937 letter pointed up the discrimination between per annum and per diem employees on *nonwork* days. But, even though not specifically adverted to, it would seem that a similar discrimination was also apparent as to *work* days in that per annum employees would receive no extra pay, while per diem employees would receive not only their regular wage but an equal amount as holiday pay.

received by his fellow employee who is excused from so working.   But this is no discrimination as it likewise is visited upon the per annum employee.[5]

We now turn to other indications supporting the position that the 1885 Resolution was repealed.   As we indicated earlier, the double payment for holiday work recognized prior to the 1938 Resolution came about in 1906 through an interpretation of the 1885 Resolution by the Assistant Comptroller of the Treasury.   This ruling was recognized by all departments and agencies of the Government until August 1938, when the Comptroller General held that the 1885 Resolution had been repealed by the 1938 Resolution and gratuity pay for holidays was no longer a right of per diem employees.[6]   This opinion was followed consistently by all of the departments and agencies of the Government.   In this regard it is of importance to note that several efforts were made to repeal this interpretation by specific Act of Congress, but in each instance the bill failed to pass.[7]   This contemporaneous interpretation of the 1938 Resolution by the agency charged with its supervision—an interpretation followed by all agencies of the Government—together

---

[5] Moreover, the Schedule of Wages here provided for 50% additional pay for work required on holidays not included in the regular tour of duty and 125% additional for work in excess of eight hours on such days.

[6] 18 Comp. Gen. 10, 13; 18 Comp. Gen. 186.

[7] H. J. Res. 303, 76th Cong., 1st Sess.; H. R. 1386, 77th Cong., 1st Sess.; S. 1930, 77th Cong., 1st Sess.; H. R. 6222, 77th Cong., 1st Sess.; S. 1679, 79th Cong., 2d Sess.

The policy of allowing gratuity pay for holidays worked in peacetime and of prohibiting it in wartime is reflected in a section of the Federal Employees Pay Act of 1945, 59 Stat. 298, 5 U. S. C. § 922. This section provided for gratuity pay for holidays worked but was not to go into effect until the cessation of hostilities in World War II. By implication then, there was no gratuity pay allowed by statute for holidays worked during wartime.

with acquiescence of the Congress, must be given great weight.

Likewise it is noted that the House Committee on the Revision of Laws has similarly treated the 1938 Resolution. In the 1940 and 1946 recodifications of the United States Code the 1885 Resolution is listed as being repealed by the later Resolution of 1938. Again in the 1952 edition of the Code the 1885 Resolution is not only listed as repealed but its entire text is omitted from the Code. An explanatory notation states that this Resolution was repealed and is now covered by § 86a which is the 1938 Resolution.

As we noted earlier, this case is not disposed of by *United States* v. *Kelly*, 342 U. S. 193, and nothing in *Kelly* lends support to the employees' argument here. Kelly was a printer employed at the Government Printing Office. The wages of employees in Kelly's office were fixed by a collective-bargaining agreement pursuant to the Act of June 7, 1924, 43 Stat. 658. This Act, though amended, remained in effect as to the provisions involved here at the time of Kelly's claim. The contract Kelly sued on was entered into by the Government under this Act. We said the problem was "whether the [1938] Resolution somehow precludes the awarding of the gratuity pay which the agreement [so made] seems to grant." 342 U. S., at 194. We held that "since the agreement provided for gratuity pay for holidays worked, [Kelly] was entitled to such pay." [8] The award to Kelly,

---

[8] Kelly also claimed under a Joint Resolution. The Resolution of 1885 provided for "gratuity pay" for holidays for *all* government per diem employees. A Joint Resolution of 1895 referring specifically to Government Printing Office employees is substantially identical in regard to holiday pay with the 1885 Resolution. The *Kelly* case was considered on the basis of the 1895 Resolution, but the Court was not required to determine whether Kelly was entitled to any pay under that Resolution.

then, was solely on the basis of the collective-bargaining agreement. Here there is no such agreement. There is nothing on which the employees can rely which affirmatively grants the double pay they claim.

The judgment of the Court of Claims is, therefore,

*Reversed.*

MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.

MR. JUSTICE BURTON, with whom MR. JUSTICE BLACK and MR. JUSTICE FRANKFURTER concur, dissenting.

The issue before us is purely one of statutory construction. For the reasons hereafter stated, we believe that the Court has misconstrued the Resolution of 1938 by treating it as completely repealing the Resolution of 1885 and all other prior holiday pay statutes. Our conclusion is based upon (1) the long-established practice under the Resolution of 1885, as amended, of allowing a full day's gratuity pay to per diem employees on holidays, whether or not those employees also received pay for services actually rendered on those days; (2) the language of the 1938 Resolution; (3) the circumstances which led to the presentation of the 1938 Resolution; and (4) the legislative history of its consideration by Congress.

The Joint Resolution of January 6, 1885, 23 Stat. 516, 5 U. S. C. (1934 ed.) § 86, provided—

"That the employees of the Navy Yard, Government Printing Office, Bureau of Printing and Engraving, and all other per diem employees of the Government on duty at Washington, or elsewhere in the United States, shall be allowed the following holidays, to wit: The first day of January, the twenty-second day of February, the fourth day of July, the twenty-fifth

day of December, and such days as may be designated by the President as days for national thanksgiving, and shall receive the same pay as on other days." [1]

This Resolution was interpreted repeatedly by the Comptroller of the Treasury, the Comptroller General of the United States, and later the Court of Claims, as allowing the designated per diem employees, on the specified holidays, their regular rate of pay as a gratuity, whether or not they worked on those days. Those who worked on such holidays received their scheduled pay for such work in addition to the holiday gratuity.[2] The administrative practice conformed to this interpretation.

This interpretation and the reason for it is made clear in the following quotation from the Comptroller of the Treasury:

"I can not reconcile with any ideas of equity and justice the proposition that Congress ever intended by this or any other statute to allow the employees (and we are now speaking of per diem employees who are paid from a lump sum and not a stated, fixed annual salary) a legal holiday with pay, and place it in the power of yourself or any other person to cause any such employee to work on such day, such em-

---

[1] In 1887 a fifth holiday was added—Memorial Day. Joint Resolution of February 23, 1887, 24 Stat. 644. For an earlier similar provision, applicable only to employees of the Government Printing Office, see 21 Stat. 304. A subsequent like provision for such employees, the Act of January 12, 1895, 28 Stat. 601, 607, was "consistently administered as providing for gratuity pay in addition to regular compensation if the employee worked on a holiday." *United States* v. *Kelly,* 342 U. S. 193, 195.

[2] See 8 Comp. Dec. 322 (1901); 13 Comp. Dec. 40 (1906); 21 Comp. Dec. 566 (1915); 22 Comp. Dec. 404 (1916); 24 Comp. Dec. 218 (1917); 24 Comp. Dec. 529 (1918); 3 Comp. Gen. 411 (1924); and 15 Comp. Gen. 809 (1936). See also, *Kelly* v. *United States,* 119 Ct.. Cl. 197, 206–207, 96 F. Supp. 611, 612–613.

ployee so working receiving just the same amount of pay for said day as those who are not compelled to work, and no more.

   .        .        .        .        .

"The laborer is worthy of his hire and should have it when compelled to work on a holiday. The giving him pay for such a day when he does not work is the free gift of Congress, and I will not stultify such gift by taking away from him his pay on a day for which he worked because Congress saw fit to give him pay for legal holidays when he did not work.

"You are therefore authorized to pay to the employees named their wages for work done on Thanksgiving Day in addition to their pay as provided by said act of 1895." 8 Comp. Dec. 322, 325 (1901).

Thus, until 1938, it was the Government's settled practice to allow gratuity pay to per diem employees on the specified holidays, whether or not the employees performed work on those holidays. It was in that significant context, late in 1937, that the incident occurred which led to the House Joint Resolution of June 29, 1938, 52 Stat. 1246, 5 U. S. C. (1952 ed.) § 86a.

On December 6, 1937, the President, by Executive Order No. 7763, 2 Fed. Reg. 2685, closed the government offices and excused all government employees from work on Friday, December 24, the day before Christmas. As December 24 was not a holiday specified by the Resolution of 1885, as amended, the Acting Comptroller General by letter of December 20, 1937, advised the Secretary of the Navy that per diem employees of the Navy Department would not be entitled either to gratuity or scheduled pay for that day unless, of course, they earned the latter by working. The difficulty was that the government offices had been closed by an Executive Order whereas

the Resolutions limited the allowance of holiday gratuities to a list of statutory holidays.[3] The above-mentioned letter gave unquestioning recognition to the existing statutory authorization of gratuity pay for specified holidays, whether or not additionally compensated labor was performed on those days. It contained no suggestion that such payments were invalid or even unwise, except to point out that the existing law allowed such gratuities even when a holiday occurred on a nonworkday. On this point, the letter commented that "even when any of such holidays falls on a nonworkday (such as a Saturday), such employees receive pay for the holiday when no work is performed thereon, in addition to the full week's pay otherwise earned, and double compensation for the day if work is performed thereon." H. R. Rep. No. 2683, 75th Cong., 3d Sess. 5.

With this situation before him, Representative Ramspeck of the House Committee on Civil Service introduced House Joint Resolution 551 providing that the "employees . . . who were excused from duty on December 24, 1937, by the Executive order of December 6, 1937, shall receive compensation for December 24, 1937, any law or regulation to the contrary notwithstanding." See 83 Cong. Rec. 9466.

This was referred to the Civil Service Commission which returned it with the suggested substitute which later became the Resolution of 1938. The Commission explained the need for the substitute as follows:

> "It is believed that the President had in view that the benefits of the holiday be accorded to all classes of employees to the greatest extent possible. The accounting authorities, however, have held that in

---

[3] The letter of December 20, 1937, appears in full in H. R. Rep. No. 2683, 75th Cong., 3d Sess. 3–5, relating to House Joint Resolution 551, later approved June 29, 1938, and now before us.

the absence of specific legislation the regular employees of the Federal Government whose compensation is fixed at a rate per day, per hour, or on a piece-work basis lose pay for that day. This has resulted in discrimination against these groups of Federal employees.

"The proposed joint legislation provides for the payment of compensation to these employees to cover the single day, December 24, 1937; but there is the broader question involved of securing statutory authority for such payments as a general practice and thus obviate the necessity for special resolutions by Congress. Such a resolution, for example, was required last year to provide payment for these same classes of employees in Washington, D. C., who were excused from duty on January 20, 1937, the date of the inauguration of the President.

"It is believed that general legislation in the following phraseology would give permanent statutory authority for payments under the circumstances indicated:

" 'Hereafter, whenever regular employees of the Federal Government, whose compensation is fixed at a rate per day, per hour, or on a piece work basis, are relieved or prevented from working solely because of the occurrence of a holiday, such as New Year's Day, Washington's Birthday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, or any other day declared a holiday by Federal statute or Executive order, or any day on which the Departments and establishments of the Government are closed by Executive order, they shall receive the same pay for such days as for other days on which an ordinary day's work is performed .

" 'SEC. 2. The joint resolution of January 6, 1885 (U. S. C., title 5, sec. 86), and all other laws incon-

sistent or in conflict with the provisions of this Act are hereby repealed to the extent of such inconsistency or conflict.' " H. R. Rep. No. 2683, 75th Cong., 3d Sess. 2.[4]

The letters, constituting the Committee Report, thus pointed to the following changes to be accomplished by the new Resolution:

1. Extend the gratuity to include not only statutory holidays but also any holidays and other nonworkdays prescribed by Executive Order.

2. Extend the gratuity to cover all "regular employees of the Federal Government, whose compensation is fixed at a rate per day, per hour, or on a piece work basis . . . ." *Ibid.*

The above extensions followed the suggestion of the Civil Service Commission that the new Resolution should answer "the broader question involved of securing statutory authority for such payments [as that of December 24, 1937] as a general practice and thus obviate the necessity for special resolutions by Congress." *Ibid.*

The new Resolution also met the implied criticism relating to the allowance of gratuities for holidays occurring on other than workdays. It did this by expressly limiting gratuity allowances to those days on which the employees "are relieved or prevented from working *solely* because of the occurrrence of a holiday such as New Year's Day . . . ." (Emphasis supplied.) 52 Stat. 1246. It thus excluded holidays when the relief from work was due in part to the day not being a workday without regard to its designation as a holiday.

The few brief statements made by the sponsor of the Resolution, Representative Ramspeck, at the time of its adoption, confirm the view that the Resolution was merely

---

[4] For the official text of the Resolution as approved June 29, 1938, see 52 Stat. 1246, 5 U. S. C. (1952 ed.) § 86a.

a corrective measure intended to aid "the lowest-paid group of employees in the Government service," rather than a measure designed to abolish substantial benefits enjoyed by per diem laborers under a 50-year-old governmental practice.[5]

It is hardly conceivable that, if either the sponsor of this Resolution or the Committee recommending its adoption had seen in it the deprivation of pay now contended for by the Government, the sponsor or the Committee would not have mentioned that effect in the presentation of the measure. The absence of any such mention is eloquent testimony that the Resolution had no such meaning. It is equally inconceivable that Congress would unanimously reduce the pay of the Govern-

---

[5] The following comprises nearly all that was said about the Resolution on the floor of the House:

"Mr. O'MALLEY. . . . What does this cover?

"Mr. RAMSPECK. This covers the lowest-paid group of employees in the Government service. It is those who work on a per diem basis. For instance, last Christmas Eve the President excused all Government employees from rendering any service. His Executive order, of course, applied to every employee in the Government service. Those who are working on a monthly salary got their pay for Christmas Eve, but those who work on a per diem were forced to take the day off, and they lost the day's pay. *This is simply to correct that situation.*

.        .        .        .        .

"Mr. COLLINS. What does it have to do with?

"Mr. RAMSPECK. It covers only those cases where the President by Executive order excuses employees from a day's work. It gives the same right to per diem employees as to the regular monthly employees.

.        .        .        .        .

"Mrs. ROGERS of Massachusetts. *This simply prevents an unintentional discrimination.*

"Mr. RAMSPECK. That is correct. The per diem employees are unintentionally discriminated *against.*" (Emphasis supplied.) 83 Cong. Rec. 9466.

ment's lowest paid employees *sub silentio*. Read in its context, and in the light of the explanation, made on the floor, that this Resolution sought "simply to correct" such a situation as that which occurred on Christmas Eve, and to prevent an unintentional discrimination *against* per diem employees, it is difficult to read into the Resolution the meaning, contrary to their interests, for which the Government now contends.

The fact that, at the time the 1938 Resolution was enacted, it was the general practice of private industry to pay some type of premium pay for holidays worked emphasizes the unlikelihood of the interpretation contended for by the Government. In *Kelly* v. *United States,* 119 Ct. Cl. 197, 209, 96 F. Supp. 611, 614, the Court of Claims, in interpreting the 1938 Resolution, described the circumstances in that year as follows:

> "With regard to its per diem and per hour employees, the so-called wage board employees, the Government is in competition with private employers, and attempts to keep its wages and working conditions in step with those in private enterprise. It is completely unthinkable that the owner of a printing shop could, by practice, or by contract, maintain the policy as to holiday pay which the Government here seeks to attribute to Congress. Such an employer might, and many employers did, in 1938, have a policy of not paying for holidays not worked. If the holiday was worked, it was paid for. Some such employers then, and most of them now [1951] have contracts with their employees providing for paid holidays, but in all such contracts there is a provision that if the holiday is in fact worked, it will be paid for again, usually at premium pay, and in addition to the holiday pay. But in no case which we have heard of, or can imagine, could an employer maintain a

practice whereby an employee who worked on a holiday received merely the same pay as one who did not work." [6]

The foregoing changes in the existing law retained its general pattern. They clarified both the classes of per diem employees entitled to a holiday gratuity, and the occasions when that gratuity was to be payable. Nowhere in the Resolution or in its legislative history is there any express statement of the Government's present contention that an employee who comes within the statutory classification of eligibility for the holiday gratuity is deprived of it if he performs some compensated labor for the Government on the holiday in question.

The Government emphasizes the phrase, added in 1938, which states that its regular per diem employees shall receive holiday pay "whenever [they] are relieved or prevented from working solely because of the occurrence of a holiday . . . ." This is interpreted by the Court of Claims as eliminating gratuity pay for those holidays which occur on nonworkdays. It does this aptly because the occurrence of a holiday on a nonworkday obviously is not the *sole* cause preventing per diem employment on those days. The Government, however, suggests that this clause also means that if a per diem employee, who becomes entitled to gratuity pay solely because of the occurrence of a holiday on a workday, nevertheless responds to a call to work on that day, he loses the

---

[6] See also, a study entitled "Personnel Practices Governing Factory and Office Administration," prepared in 1937 by F. Beatrice Brower for the National Industrial Conference Board, Inc., New York City. This covered about 450 industrial concerns employing wage earners totaling about 370,000. (P. 2.) Over 60% of such companies paid some type of premium or gratuity to their wage earners for work performed on Sundays or holidays, the *extra* pay ranging from 25% to 100%, in addition to the regular rate of pay. (Pp. 36–37.)

gratuity. Such an interpretation discriminates against the loyal holiday worker.

Moreover, such an interpretation produces the inequitable result that an employee who works on a holiday receives no more pay than an employee who is not required to work on the same holiday.

Concededly, this was not so before 1938. At least until then the 1885 Resolution was recognized as authorizing gratuity pay for holidays, whether or not work was performed on those days. Accordingly, in 1938, it would have been a simple thing to repeal the 1885 Resolution outright if that result were intended. Instead of doing so, the repealing section in the 1938 Resolution expressly limited itself to the inconsistencies and conflicts between, on the one hand, the new Resolution and, on the other, the 1885 Resolution and "all other laws inconsistent or in conflict with the provisions" of the new Resolution. Such a limited repeal well reflects the above-recited legislative history. It shows the character of the new Resolution to be that of corrective legislation in the interests of the laborers. To be sure, the House Committee Report in its treatment of § 2 of the new Resolution did set forth the text of the 1885 Resolution as that of the Resolution cited in that repealing section. That recital is not sufficient to change the specifically restricted repealing clause into an outright repeal in the face of its express limitation to inconsistencies and conflicts.

The Resolutions of 1885 and 1938 are *in pari materia* and should be read together. When so read, there is no basis for treating differently the several holidays specified in the Resolutions. No "double standard" results. The 1938 Resolution expands the statutory list of holidays to include various other days that might be designated by Executive Orders. None of the original list are excluded.

58

Petitioner cites no judicial decision upholding its interpretation. The Court of Claims has twice rejected it and taken the opposite view.[7]

Petitioner cites as authority for its position the brief rulings of the Comptroller General under the 1938 Resolution. Without reviewing the material which has influenced the Court of Claims, those rulings assume, without discussion or judicial support, that the Resolution of 1938 completely repealed the Resolution of 1885. See 18 Comp. Gen. 10, 16, 186, 191 (1938). The treatment of the amendment in the publication of the United States Code is not controlling and cites no judicial authority.

In *United States* v. *Kelly,* 342 U. S. 193, we held that per diem employees of the Government Printing Office were entitled to the gratuity pay guaranteed by their collective-bargaining agreement. We also said expressly that the 1938 Resolution "was silent on the subject of gratuity pay for holidays on which work was performed." *Id.,* at 195. The *Kelly* case thus shows that, at the very least, the gratuity policy of the 1885 Resolution is not prohibited after 1938. Accordingly, it would be consistent with that case to uphold the Court of Claims in the instant case. The collective-bargaining contract in the *Kelly* case was declaratory of, not contrary to, the policy of the 1885 Resolution.

For the foregoing reasons, the judgment of the Court of Claims should be affirmed.

---

[7] *Kelly* v. *United States* (two judges dissenting), 119 Ct. Cl. 197, 96 F. Supp. 611, aff'd on other grounds, *United States* v. *Kelly,* 342 U. S. 193; and the instant case, *Bergh* v. *United States* (one judge dissenting), 132 Ct. Cl. 564, 132 F. Supp. 462. See also, *Adams* v. *United States,* 42 Ct. Cl. 191, 212–213.