Ellis CAMPBELL, Jr., District Director of Internal Revenue at Dallas, Texas, Appellant,

v.

Lee R. BROWN, d/b/a Brown's Top and Seat Cover Co., Appellee.

No. 16462.

United States Court of Appeals
Fifth Circuit.

June 14, 1957.

Walter R. Gelles, Lee A. Jackson, Attys., Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., John C. Ford, Asst. U. S. Atty., Dallas, Tex., I. Henry Kutz, Atty., Dept. of Justice, Washington, D. C., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellant.

Frank B. Appleman, Fort Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The appellee, Lee R. Brown, brought an action against Ellis Campbell, Jr., as District Director of Internal Revenue at Dallas, Texas, for the recovery of Federal excise taxes paid under 26 U.S.C.A., I. R.C.1939, § 3403. This statute imposed a percentage tax upon the sale price of automobiles, trucks, busses, highway tractors and trailers, and upon the sale price of automobile "parts or accessories", with certain exceptions not here applicable. It was stipulated that during the years 1952 through 1954, Brown owned and operated a business known as Brown's Top & Seat Cover Company. He did not have ready-made seat covers in stock. He kept on hand material of various types, qualities and colors which he purchased in bolts or rolls. The operation was thus described in the stipulation:

"The customer would choose his desired materials from the stock, and taxpayer would remove the automobile seats and backrests and place them on tables where he would measure the material to the seats and

backrests of the customer's car, marking the material, then removing the material and cutting it to fit. In instances in which the seats or backrests could not be removed he would place the material on the seats or backrests of the customer's car, marking the same, and remove it to be cut. The several pieces would then be sewed together and a decorative piping sewed at the seams. The materials so sewed together would then be fastened to the seats and backrests of the automobile. The price to the customer was fixed by the price of the material, plus labor and overhead costs and a profit. The above described business is commonly referred to and known as the custom-made seat cover business."

It was also stipulated that if the operations of Brown were not subject to the manufacturer's excise tax he should recover $677.67, interest and costs; if he is subject to the tax and he has correctly computed it, then he is entitled to recover $215.57, with interest and costs; but if Brown is subject to the tax and the Commissioner's computation is correct, he is not entitled to recover. The district court gave judgment for Brown and stated as its reason:

> "I feel that the tax as levied by the wording of the statute does not cover what we might call tailors engaged in the manufacture of seat covers. He doesn't have any stock, he is not classed as a manufacturer, he is a tailor and makes a garment to suit you. This man makes a seat cover for you. To cover him I think the statute would have to be explicit and it is not the purpose of the Court to extend the statute.
>
> "I don't believe the statute covers it, so, the plaintiff would be entitled to recover."

As the district court held that Brown was not subject to the tax, it had no occasion to consider the method of computing the tax.

The pertinent Treasury Regulations are the following:

> "The term 'manufacturer' includes a person who produces a taxable article from scrap, salvage, or junk material, as well as from new or raw material, (1) by processing, manipulating, or changing the form of an article, or (2) by combining or assembling two or more articles." Treas.Reg. 46 § 316.4(a).
>
> "Under certain circumstances, as where a person manufactures or produces a taxable article for a person who furnishes materials and retains title thereto, the person for whom the taxable article is manufactured or produced, and not the person who actually manufactures or produces it, will be considered the manufacturer." Treas.Reg. 46 § 316.4(b).
>
> "The term 'parts or accessories' for an automobile truck or other automobile chassis or body, taxable tractor, or motorcycle, includes (a) any article the primary use of which is to improve, repair, replace, or serve as a component part of such vehicle or article, (b) any article designed to be attached to or used in connection with such vehicle or article to add to its utility or ornamentation, and (c) any article the primary use of which is in connection with such vehicle or article whether or not essential to its operation or use." Treas.Reg. 46 § 316.55(a).
>
> "The term 'parts and accessories' shall be understood to embrace all such articles as have reached such a stage of manufacture that they are commonly or commercially known as parts and accessories whether or not fitting operations are required in connection with installation. The term shall not be understood to embrace raw materials used in the manufacture of such articles." Treas. Reg. 46 § 316.55(b).

The type of transactions with which we are here concerned was the subject of a ruling effective August 18, 1952. We quote so much of this ruling as need have our attention:

"Section 3403(c) of the Code, as amended, imposes, effective November 1, 1951, a tax of 8 percent on the sale by the manufacturer of parts or accessories for vehicles taxable under subsections (a) and (b) of section 3403 of the Code, as amended, except that on and after April 1, 1954, the rate of tax shall be 5 percent. Seat covers for automobiles are considered to be parts or accessories within the meaning of section 3403(c) of the Code, as amended, and sales thereof by the manufacturer are subject to tax.

"The Bureau has issued rulings heretofore that the only circumstances under which the tax does not apply to sales of seat covers by a manufacturer, is where the seat covers are individually designed, cut, tailored, and fitted by the manufacturer to the automobile belonging to the person who contracts for the performance of such operation, and such person is the consumer of the seat covers. Such rulings provided, however, that the sale of seat covers, similarly produced, to a dealer in new or used automobiles is not a sale for consumption but one for resale, and that the tax attaches to the manufacturer's sale thereof.

"Upon reconsideration of the matter, the Bureau is now of the opinion that where a manufacturer furnishes the material and produces automobile seat covers for the consumer thereof, according to individual design and measurement, the sale by the manufacturer of such seat covers is taxable under section 3403(c) of the Code, as amended, regardless of whether they are intalled by the manufacturer or by other persons." S.T. 944, 1952–2 Cum.Bull. 255.

The appellee invokes the frequently declared rule of statutory construction that long continued interpretation by those charged with the administration of a law should not be overturned except for very cogent reasons and sustains his position by citing United States v. Leslie Salt Co., 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441. He also brings before us the canon of construction that the re-enactment of a statute without substantial change is, presumptively, a legislative approval of prior administrative construction. See United States v. Zazove, 334 U.S. 602, 68 S.Ct. 1284, 92 L.Ed. 1601; United States v. Bergh, 352 U.S. 40, 77 S.Ct. 106, 1 L.Ed.2d 102.

In the earliest of the decisions, one from the District Court of Connecticut in 1926, the plaintiff, seeking a recovery of the excise tax paid by him, did a general automobile repair business and, among other activities, made and fitted automobile side curtains, tops, slip covers and carpets to the special order of its patrons. It was held that the dominant aspect of the transactions was that of work performed rather than of accessories sold. John J. Roche Co. v. Eaton, D.C.Conn.1926, 14 F.2d 857. In 1954 it was held in the Southern District of Florida, without discussion of principle or citation of authority, that the sales of custom-made seat covers were sales of labor and materials and not sales of seat covers as accessories. Johnnie & Mack, Inc., v. United States, D.C.S.D.Fla.1954, 123 F.Supp. 400. This was followed in 1957 by a decision of the same court involving the same parties and reaching the same result. Johnnie & Mack, Inc., v. United States, D.C.S.D.Fla.1957, 151 F.Supp. 748. The District Court of Hawaii had the question in 1955. Under circumstances very like those before us it was held that seat covers were accessories and that the making of them was manufacturing. Masao Hirasuna v. McKenney, D.C.Hawaii 1955, 135 F.Supp. 897. In the following year the Eastern District of Virginia rejected the reasoning of the Hawaii court and followed the Roche case. Keeton v. United States, D.C.E.D.Va.1956, 141 F.Supp. 516. The district court, in the case we here review, concluded that the custom-made seat cover business was tailoring rather than manufacturing and the statute would have to be more explicit to cover such transactions. Brown v. Campbell,

District Director, D.C.N.D.Tex.1956, 1957 C.C.H.Fed.Tax Rep.Par. 9354.

Both the Keeton and Hirasuna cases were appealed and both of the Courts of Appeal held that the tax was applicable. United States v. Keeton, 4 Cir., 1956, 238 F.2d 878, certiorari denied 77 S.Ct. 1056. Masao Hirasuna v. McKenney, 9 Cir., 1957, 245 F.2d 98. We are in accord with these decisions. The seat cover is an accessory of a motor vehicle and the making of it is manufacturing. It will not do to say that the car owner buys cloth from a bolt or a roll and the seller of it then renders a service by tailoring to make it into a seat cover. That which the car owner buys is a seat cover and the maker of it sells nothing less and nothing different. Nor can we agree that the sale of seat covers is the rendering of repairs. If an existing seat cover required and was given a patch or if a ripped seam was resewed, the seat cover would be repaired; but where a new article is made of wholly new material it is not, in the making of seat covers, to be classed as repairs. We are unable to see any reason for the distinction between seat covers made for an owner who is also the user of the car and those made for an owner who, as a dealer, holds the car for sale. Such was the distinction made by the original administrative practice and such is the distinction for which Brown here contends.

We do not think our construction of the statute is controlled by the former administrative practice. The rule which attaches weight to administrative interpretation is inapplicable where the meaning of a statute is not doubtful, or where the construction has not been uniform. United States v. Missouri Pacific Railroad Company, 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322. The unpublished rulings upon which Brown relies were superseded in 1952 by the published ruling. The prior construction has been repudiated by and is now challenged by the administrative agency which made it. It can no longer be given substantial weight. Order of Railway Conductors of America v. Swan, 329 U.S. 520, 67 S.Ct. 405, 91 L.Ed. 471. We

think we should not impute to Congress any intent, by the re-enactment of the statutory provision, to adopt the construction evidenced by the former administrative practices. It is sometimes said that the reenactment of a statute without change gives an established interpretation the force of law. Such a rule, however, is no more than an aid in statutory construction. It is useful at times in resolving statutory ambiguities. It does not mean that it has become so embedded in the law that only Congress can make a change. It gives way before changes in the prior rule or practice through exercise by the administrative agency of its continuing rule-making power. Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155. The Commissioner is not bound either by administrative interpretation or equitable estoppel to an erroneous construction of the law. Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746. The prior administrative practice has not frozen the construction of the statute so as to require a holding that custom-made seat covers are not accessories or that the making of them is not manufacturing. The sale of seat covers made by the appellee Brown subjects them to the excise tax imposed by the statute.

In calculating the tax which Brown paid with his return, he deducted from his total sales forty per cent. as retailer's profit, and from the balance remaining he deducted ten per cent. as a jobber's profit and figured the tax on the balance. The agents of the Internal Revenue Service followed the Commissioner's formula set forth in Revenue Ruling 42, 1953–1 Cum.Bull. 463. This method of computation produced a greater amount of tax than by Brown's method, resulting in a deficiency determination of $215.57, which Brown paid. The method of computing the tax and the correct amount of the tax were not reached by the district court. These questions should be there decided. For further proceedings to make such a determination, the cause is remanded.

Reversed and remanded.