**MISSISSIPPI VALLEY GAS COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,
**United Gas Pipe Line Company,**
Intervenor.

No. 18501.

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1961.

Thomas Fletcher, Houston, Tex., C. Huffman Lewis, Shreveport, La., W. O. Crain, General Counsel, United Gas Pipe Line Co., Shreveport, La., Vinson, Elkins, Weems & Searls, John L. Daniel, Houston, Tex., Vernon O. Woods, Shreveport, La., of counsel, for intervenor United Gas Pipe Line Co.

John M. Kuykendall, Jr., Jackson, Miss., Reuben Goldberg, George Spiegel, Washington, D. C., for petitioner Mississippi Valley Gas Co.

Joe T. Patterson, Atty. Gen., State of Mississippi. By: Wade H. Creekmore, Asst. Atty. Gen., Attorneys for Mississippi Public Service Commission, Amicus Curiae.

John C. Mason, Acting Gen. Counsel, Howard E. Wahrenbrock, Sol., F.P.C., Washington, D. C., Arthur H. Fribourg, John D. Lane, Attorneys, Federal Power Commission, Washington, D. C., for respondent.

Before TUTTLE, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The Petitioner, Mississippi Valley Gas Company, herein called Mississippi, brings before us for review an order of the Federal Power Commission as authorized by Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b). Mississippi is a distributor of natural gas which it purchases under contract from United Gas Pipe Line Company, herein called United. It has intervened in these proceedings. Both Mississippi and United are natural gas companies within the terms of the Natural Gas Act. 15 U.S.C.A. § 717a(6). There are two rate schedules applicable to the purchases by Mississippi from United. One of these covers sales of gas for unrestricted uses and such sales and the rates applicable thereto are not the subject of any controversy to which this review is directly related. The other rate schedule covers gas purchased by Mississippi for resale to industrial users only.

■ On February 11, 1960, United tendered for filing with the Commission revised rate schedules in two parts to become effective on March 13, 1960. One part of the schedules related to the sales for unrestricted uses, and the other increased the rates payable for gas sold for resale for industrial purposes. The Commission, on March 10, 1960, ordered a hearing and suspended the rates except those applying to sales restricted to industrial uses. On April 5, 1960, Mississippi filed with the Commission a motion to require United to furnish a bond or undertaking to assure a refund of such of the industrial rates and charges as

should be found excessive. The motion was denied and application for a rehearing was sought. The Commission, on June 24, 1960, denied the application for rehearing and in its order it said:

"Mississippi argues, as it did in its motion of April 5, 1960, that the Commission's power to suspend under Section 4(e) of the Natural Gas Act is directed only to non-industrial sales for resale while the power to require refunds extends to the industrial sales for resale as well. We have rejected this argument in our May 5, 1960, order because it has been the longstanding, consistent practice of the Commission to allow rate schedules for sales for resale for industrial use only to become effective without bond or undertaking. In so doing, the Commission has steadfastly adhered to the provisions of Section 4(e) of the Natural Gas Act."

The correctness of the Commission's decision is challenged by the petition of Mississippi for review and its position is seconded by the Mississippi Public Service Commission in a brief of the Attorney General of that State filed as amicus curiae. The somewhat narrow question presented to us is whether the Natural Gas Act empowers the Commission to order United to file a bond or undertaking to assure refunds of such excess charges applicable to its sales to Mississippi for industrial uses as may be found unjustified in a rate proceeding pending before the Commission. The answer to the question depends upon the meaning of Section 4(e) of the Act.[1]

1. "Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, or State commission, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect: Provided, That the Commission shall not have authority to suspend the rate, charge, classification, or service for the sale of natural gas for resale for industrial use only; and after full

The important words upon which this controversy turns are "where increased rates or charges are thus made effective," and of these the crucial word is "thus."

■ It is not, of course, contended that there is any power in the Commission to suspend the operation of rate schedules which apply to sales of gas for resale for industrial uses only, as is the situation here. Mississippi contends, however, that notwithstanding the absence of a power to suspend the industrial rate schedule, there is a clear grant of authority to require a bond for refunds in such a case. If, however, urges Mississippi, it should be decided that there is ambiguity in the statutory language, the Commission's interpretation must be rejected because it is in conflict with statutory purposes and defeats the manifest intent as clearly expressed in other provisions of the Act. So also, Mississippi reasons, the meaning attributed by the Commission to the language under consideration gives a literal effect to a statutory quirk which produces an absurd result and conflicts with the manifest purposes of the Act as a whole. We are unpersuaded by the arguments advanced by Mississippi. It seems plain that the authorization for requiring refund bonds is granted only where increased rates or charges are "thus", by the expiration of a suspension period, made effective. This is in harmony with the Congressional proviso that industrial rates should not be suspended.

The Supreme Court, on two occasions, has commented upon the meaning of Section 4(e) of the Act. In United Gas Pipe Line Co. v. Mobile Gas Corporation, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373, it was said:

"All that § 4(e) does, however, is to add to this basic power [of review], in the case of a newly changed rate or contract (except 'industrial' rates), the further powers (1) to preserve the status quo pending review of the new rate by suspending its operation for a limited period, and (2) thereafter to make its order retroactive, by means of the refund procedure, to the date the change became effective." 350 U.S. 332, 341, 76 S.Ct. 373, 379.

A similar observation is to be found in United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153,[2] in this language:

"The Act comes into play as to rate changes only in (1) imposing upon the seller the procedural requirement of filing timely notice of change, (2) giving the Commission authority to review such changes, and (3) authorizing the Commission, in the case of rates for sales of gas for other than exclusively in-

hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such in-

crease, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the natural-gas company, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible." 15 U.S. C.A. § 717c(e).

2. Mississippi Valley Gas Company was one of the respondents in the Memphis case.

dustrial use, to suspend the new rates for a five-month period and thereafter to require the posting of a refund bond pending a determination of the lawfulness of the rates as changed." 358 U.S. 103, 113, 79 S.Ct. 194, 200.

There was no question before the Court in the Mobile and Memphis cases as to bonds for refunds of excessive industrial rates and so perhaps it might be said, as Mississippi would have us say, that the statements of the Court, so far as here pertinent, are dicta and as such are not binding. If as dicta the statements are to be treated, they must nevertheless be regarded as considered and repeated dicta, and therefore highly persuasive of the correctness of the Commission's decision.

The question which is before us has been presented to and decided by two Courts of Appeal in Pacific Natural Gas Co. v. Federal Power Commission, 9 Cir., 1960, 276 F.2d 350, and in Gas Service Company v. Federal Power Commission, 1960, 108 U.S.App.D.C. 334, 282 F.2d 496. In the Pacific Natural Gas Co. case the Court reviewed [3] the early legislative history of the proposals for the regulation of sales of industrial gas. The Court then continued with this language:

"When the bill was reintroduced at the next session of the Congress, the proviso exempting industrial gas from all regulation had been deleted. However, on the floor of the House an amendment was offered, which is presently found in 15 U.S.C.A. § 717c(e), exempting industrial gas from the Federal Power Commission's power to suspend rates, and exempting industrial gas from the discretionary power of the Commission to require security from the supplier to make reparations in cases where new rates are set aside by the Commission as unreasonable after the period of suspension has expired. See 81 Cong.Rec. 6727 (1937). This compromise provision apparently was acceptable to those who originally had opposed any and all regulation of industrial gas. Moreover, Representative Lea, the draftsman of both bills, noted that contracts for industrial gas were, at that time anyway, usually of short-term duration, and that the effect of the proviso was to prevent suspension when such short-term contracts were involved. See Ibid. at 6727–28. We cannot escape the conclusion that the Congress had a rational basis for saying that industrial gas needed less regulation than non-industrial gas." 276 F.2d 350, 354.

The foregoing statement was quoted with approval in the Gas Service Company opinion. We also find ourselves in agreement with it.

3. "The enactment of the Natural Gas Act was preceded by some available legislative history. See, generally, DeVane, 'Highlights of Legislative History of the Federal Power Act of 1935 and the Natural Gas Act of 1938,' 14 Geo.Wash.L.Rev. 30 (1945). During the second session of the 74th Congress, hearings were held on H.R. 11662, an early draft of what finally emerged as the Natural Gas Act of 1938. At this time the Act contained no provision such as is now found in 15 U.S. C.A. § 717c(e) exempting industrial gas from the Commission's power to suspend rates. Instead, § 1(b) of H.R. 11662, provided that the Federal Power Commission was not authorized to consider or establish rates for the sale of industrial gas at all, on the perfectly rational ground that rigorous competition from other fuels assured a low price for industrial gas and thus rendered governmental supervision of the supplier's charges unnecessary. * * * Some arguments against the exemption of industrial gas from the regulatory powers of the Commission were also heard, particularly the argument that if industrial gas were left unregulated and subject to cutthroat competition, the Commission in fixing rates for domestic users of gas would have to consider the low profit of suppliers from sales of industrial gas and on that basis allow a greater profit on sales of domestic gas so as to give the supplier a fair profit on the investment as a whole." 276 F.2d 350, 353–354.

The Commission has at all times followed the view that its power to require a refund bond existed only where the rates have been suspended and does not exist where rates have not been suspended and are not subject to suspension. Empire Gas & Fuel Co., 2 F.P.C. 830; Home Gas Co., 2 F.P.C. 848; Independent Natural Gas Co., 3 F.P.C. 868; United Gas Pipe Line Co., 7 F.P.C. 791; Mobile Gas Service Co., 12 F.P.C. 1422. The Commission has believed that it should have the power which it has consistently held that it does not have, and bills which failed of enactment were introduced in Congress to confer the power upon it. See Gas Service Company v. Federal Power Commission, 108 U.S.App.D.C. 334, 282 F.2d 496, 499. The interpretation by the Commission which is charged with the administration of the Act, together with the acquiescence of Congress in that interpretation, is to be given great weight. United States v. Bergh, 352 U.S. 40, 77 S.Ct. 106, 1 L.Ed.2d 102.

One of the Commissioners, concurring in the result, said in his concurring statement:

> "The obligation to make refunds will exist whether or not such an undertaking is filed and applicants have not shown where the filing of such an undertaking would give any additional assurance or security that a refund if ordered would be paid."

The conclusion we have reached makes it unnecessary that we decide or express any opinion as to whether there is an obligation to make refunds where there has been no suspension order and no refund bond required. The question before us is whether the giving of a refund bond can be ordered with respect to an industrial rate schedule.

Mississippi has filed a motion to strike portions of United's brief as incorporating and referring to matters not contained in the record. United has answered the motion and charges Mississippi with the same conduct. We have, we are confident, not been misled by the statement in either brief of any matter outside the record. We have not acted upon the motion and see no need to do so.

The plain meaning of the statutory language here involved, the legislative history, the consistent interpretation by the Commission, and the judicial precedents, all lead us to the conclusion that the order which is before us for review was correctly entered. The order of the Federal Power Commission will be

Affirmed.