0012

T. Eston MARCHANT, Adjutant General of South Carolina, Respondent, v. Fred P. HAMILTON, Max Wiggington, Jerry C. Lee, Harold E. Finley, Henry R. Kuemmerer, William Evatt, Jack Spearman, James Myers, Eugene Edney, and Roy Littleton, individually and as members of the Oconee County School Board of Trustees, Appellants.

(309 S. E. (2d) 781)

Court of Appeals

---

[2] Actual damages may, of course, be nominal or presumed in some cases.

*Kenneth L. Childs*, Columbia, *for appellants.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod* and *Sr. Asst. Atty. Gen. Richard B. Kale, Jr.*, Columbia, *for respondent.*

Dec. 5, 1983.

SANDERS, Chief Judge:

This is an action by the Adjutant General of South Carolina against the Oconee County School Board for declaratory judgment on the question of whether members of the National Guard who are also employees of the School Board are entitled to their full civilian pay while undergoing military training. The School Board maintained it is only obligated to pay the amount civilian pay exceeds military pay. The lower court ruled against the position of the School Board. We affirm.

The decision of the lower court turned on its interpretation of sections 8-7-90 and 25-1-2250 of the 1976 Code of Laws of South Carolina. We adopt, in substance, the order of the lower court as a correct interpretation of these statutes.

Both Code sections provide, among other things, that officers and employees of the State of South Carolina and its political subdivisions are entitled to military leave for training with the National Guard "without loss of pay, time or efficiency rating."[1]

---

[1] Section 8-7-90 provides:
  All officers and employees of *this State or any political subdivision*

In the interpretation of statutes, the primary function
■ of courts is to ascertain and give effect to the intention
of the legislature. *Merchants Mutual Insurance Company v. South Carolina Second Injury Fund*, 277 S. C. 604, 291 S. E. (2d) 667 (1982). In this connection, an examination of the legislative history of sections 8-7-90 and 25-1-2250 is useful.

The original Act containing the phrase "without loss of pay" first appears in section 10 (Adjutant General) of Act No. 518, the 1944 State Appropriations Act. 1944 S. C. Acts 1431. It reappeared there annually until 1950 when it was adopted as a part of the permanent provisions of the Act for that year. This predecessor Act used the following language which is almost identical to that of the similar Congressional Act of May 12, 1917:

> *Provided further,* That all officers and employees of the United States or of the District of Columbia who shall be members of the Officers' Reserve Corps shall be entitled to leave of absence from their respective duties, *without loss of pay, time, or efficiency rating,* on all days during which they shall be ordered to duty with troops or at field exercises, or for instruction, for periods not to exceed 15 days in any one calendar year.
>
> *Provided further,* That members of the Officers' Reserve Corps who are in the employ of the United States Government or of the District of Columbia and who are

thereof, who are either enlisted or commissioned members of the South Carolina National Guard, the United States Naval Reserve, the Officers Reserve Corps, the Enlisted Reserve Corps, the Reserve Corps of the Marines, the Coast Guard Reserve and the United States Air Force Reserve shall be entitled to leave of absence from their respective duties *without loss of pay, time or efficiency rating,* for a period not exceeding fifteen days in any one year during which they may be engaged in training or other such duties ordered by the Governor, the War Department, the Treasury Department, the Navy Department or the Air Force Department. In the event any such person is called upon to serve during an emergency he shall be entitled to such leave of absence for not exceeding thirty additional days. (Emphasis added.)

A similar provision is contained in section 25-1-2250 as part of the Military Code:

Officers and employees *of the State of South Carolina, and departments and subdivisions thereof,* shall be entitled to military leave *without loss of pay, seniority or efficiency rating,* when attending National Guard encampments or schools for training, under proper authority, and on all other occasions when ordered to active duty, in the service of the State of South Carolina. (Emphasis added.)

ordered to duty by proper authority shall, when relieved from duty, be restored to the positions held by them when ordered to duty. (Emphasis added.)

Code section 25-1-20 specifically provides that the National Defense Act of June 3, 1916, and all acts amendatory thereto (including the above quoted provision) are incorporated into the Military Code of South Carolina.[2] The Comptroller General of the United States has consistently interpreted the phrase "without loss of pay," as used in the federal act, to mean that federal employees are entitled to receive their full civilian pay, in addition to any military compensation which they might receive. In a letter to the Secretary of the Navy, dated February 17, 1937, Acting Comptroller General Elliott stated that a government employee who was ordered to perform fifteen (15) days military training duty was "entitled to receive both his salary or compensation in the civilian position and the pay and allowances of his rating in the reserve . . . ." 16 Comp. Gen. 767 (1937); *see also* 16 Comp. Gen. 1103 (1937); 20 Comp. Gen. 282 (1940); 27 Comp. Gen. 353 (1947). It is significant that this interpretation of the federal act was made prior to the adoption of its language by South Carolina. Administrative interpretations of statutes, consistently followed by the agencies charged with their administration and not expressly changed by Congress, are entitled to great weight. *Billings v. Truesdell,* 321 U. S. 542, 64 S. Ct. 737, 88 L. Ed. 917 (1944); *United States v. Bergh,* 352 U. S. 40, 77 S. Ct. 106, 1 L. Ed. (2d) 102 (1956). Moreover, in construing statutes the general rule is that the adoption of substantially identical wording of a statute from another legislative jurisdiction carries with it the presumption that the legislature was aware of previous interpretations placed on the wording and intended that they form a part of the statute as adopted. *Fulghum v. Bleakley,* 177 S. C. 286, 181 S. E. 30 (1935); *Carter v. Penney Tire and Recapping*

---

[2] Section 80 of the original 1916 Act included a similar provision:
All officers and employees of the United States and of the District of Columbia who shall be members of the National Guard shall be entitled to leave of absence from their respective duties, *without loss of pay, time, or efficiency rating,* on all days during which they shall be engaged in field or coast-defense training ordered or authorized under the provisions of this Act. (Emphasis added.)

*Company*, 261 S. C. 341, 200 S. E. (2d) 64 (1973). It may be presumed in the instant case that when the South Carolina General Assembly first adopted sections 8-7-90 and 25-1-2250, using the language of the federal law, it was aware of the administrative interpretation which had been placed upon the federal statute by the Comptroller General.

A similar ruling was made by the Supreme Court of Oklahoma in *Reed v. City of Tulsa*, 569 P. (2d) 451 (Okl. 1977), construing statutes analogous to those here.[3] The court specifically held "without loss of pay" to mean "municipalities (and by inference the state and its subdivisions) are required to pay their officers and employees their full salary, when such officers and employees are properly called to active service with the National Guard or other reserve components." *Reed* at 454. *See also Young v. Tyrone Area School District*, 25 Pa. Cmwlth. 80, 358 A. (2d) 758 (1976) (similar statute construed as clearly and unambiguously providing that reservists, should not lose any teaching pay); *Northern Ohio Patrolmen's Benevolent Ass'n v. City of Parma*, 61, Ohio St. (2d) 375, 402 N. E. (2d) 519 (1980) (dicta recognized that similar statute required full civilian pay).

In *Reed*, the court found that the legislative purpose in enacting this statute was to provide an incentive for public employees to join the National Guard. While this finding of legislative purpose was in part derived by reference to a

---

[3] 44 OKLA. STAT. 1973 Supp. § 209 provides:

All officers and employees of the state, or a subdivision thereof, or a municipality therein, who are members of the National Guard, shall when ordered by proper authority to active service, be entitled to a leave of absence from such civil employment for the period of such active service, without loss of status or efficiency rating, and *without loss of pay* during the first twenty (20) calendar days of such leave of absence during any calendar year. (Emphasis added.)

72 OKLA. STAT. 1973 Supp. § 48 provides:

All officers and employees of the state, or a subdivision thereof, or a municipality therein, who are members, either officers or enlisted men of the Reserve Corps of the Army, the Navy, the Marine Corps, the Coast Guard, the Women's Auxiliary Corps, or any other component of the Armed Forces of the United States, shall, when ordered by the proper authority to active duty or service, be entitled to a leave of absence from such civil employment for the period of such active service without loss of status or efficiency rating and *without loss of pay* during the first twenty (20) calendar days of such leave of absence during any calendar year. (Emphasis added.)

specific provision of the Oklahoma Constitution, in our view such a purpose can be inferred from the South Carolina statutes themselves.[4]

The construction of the Oklahoma statutes in *Reed* has further application in the instant case. Both South Carolina statutes address the relationship between the State (its political subdivisions) and its employees. These statutes provide that employees lose "no seniority, efficiency rating or time," as well as no pay. Since seniority, efficiency rating and time refer to the employees' relationship with their civilian employer, it would be unwarranted to construe the phrase "loss of pay" as referring to anything other than their pay from the civilian employer. Therefore, the employee would be entitled to his full civilian pay during periods of National Guard training, as well as no loss of "seniority, efficiency rating or time."

The lower court also cited a number of opinions of our Attorney General interpretating these statutes and the phrase "without loss of pay" as entitling employees of the State and its political subdivisions to receive their full civilian pay without regard to any amount received as military pay. *See* letter to City Attorney (May 9, 1963); letter to Municipal Officer (April 14, 1972); letter to Attorney for *School District* (May 27, 1975) (emphasis added); letter to member of House of Rep. (March 24, 1975); letter to Deputy Corporation Counselor, 1977 Op. Att'y Gen. 218 (September 12, 1977); letter to Airport Director (November 22, 1978); letter to Chief of Staff, S. C. A. R. N. G. (September 14, 1979); letter to City Attorney (April 2, 1980).

As the School Board correctly argues, these opinions are not binding on this Court. However, they should not be disregarded without cogent reason. *Etiwan Fertilizer Co. v. South Carolina Tax Commission*, 217 S. Ct. 354, 60 S. E. (2d) 682 (1950). We find no such reason. To the contrary,

---

[4] The purpose for encouraging such participation is also expressed in a poem by Kipling entitled "Tommy" (a British soldier is called a Tommy):
   For it's Tommy this, an' Tommy that, an' "Chuck him out, the brute!"
   But it's "Savior of his country" when the guns begin to shoot;
   An' it's Tommy this, an' Tommy that, an' anything you please;
   An' Tommy ain't a bloomin' fool — You bet that Tommy sees!
   *Rudyard Kipling's Verse* (1891)

we hold that when the legislature said a member of the National Guard should suffer "no loss of pay," it meant what it said. It did not mean that a guardsman should have his civilian pay reduced by whatever amount he receives from the National Guard.

We have reviewed cases from various other states interpreting similar statutes. While these cases involve state laws not precisely identical to those of South Carolina, we have found, and the School Board has cited, no case from any state holding contrary to the result reached here.

We therefore hold that Code sections 8-7-90 and 25-1-2250 require the State and its political subdivisions, including the School Board here, to pay their employees full salary during absences for military training. Such civilian compensation shall be without regard to any compensation received from military sources.

Accordingly, the ruling of the lower court is

Affirmed.

GARDNER and BELL, JJ., concur.