# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 20, 2015   Decided May 26, 2015

No. 14-5081

VALIDUS REINSURANCE, LTD.,
APPELLEE

v.

UNITED STATES OF AMERICA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00109)

———

*Ellen Page DelSole*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Tamara W. Ashford*, Acting Assistant Attorney General, *Ronald C. Machen, Jr.*, U.S. Attorney, and *Gilbert S. Rothenberg* and *Richard Farber*, Attorneys.

*Joseph R. Guerra* argued the cause for appellee. With him on the brief were *Erika L. Maley*, *R. Lee Christie*, and *Tracy D. Williams.*

*M. Kristan Rizzolo* was on the brief for *amici curiae* International Underwriting Association of London, Ltd., et al. in support of appellee.

Before: ROGERS and BROWN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the court by *Circuit Judge* Rogers.

Rogers, *Circuit Judge*: The United States appeals the grant of summary judgment to Validus Reinsurance, Ltd., in its suit for the refund of excise taxes imposed under 26 U.S.C. § 4371, which taxes certain types of "reinsurance." Validus, a foreign reinsurer, paid the excise tax on reinsurance policies it had purchased from other foreign reinsurance companies. The government contends that "the best reading of the statute" establishes its applicability to reinsurance purchased by a reinsurer because such policies (known as "retrocessions") are "a type of reinsurance," Appellant's Br. 24, and also that interpretation carries out Congress's intent "to level the playing field" between domestic (U.S.) insurance companies subject to U.S. income taxes and foreign insurance companies that are not so burdened, *id.* at 21. Validus responds that the plain text, considered in the context of reinsurance, and the statutory structure make clear the excise tax does not apply to retrocessions, and further, the presumption against extraterritoriality resolves any doubt that the tax is inapplicable to Validus's purchases of reinsurance from a foreign reinsurer (*i.e.*, to wholly foreign retrocessions). Because both parties offer plausible interpretations, we conclude that the text of the statute is ambiguous with respect to its application to wholly foreign retrocessions. The ambiguity is resolved upon applying the presumption against extraterritoriality because there is no clear indication by Congress that it intended the excise tax to apply to premiums on wholly foreign retrocessions. Accordingly, we affirm the grant of summary judgment, albeit on narrower grounds, on Validus's refund claims.

**I.**

Validus, a foreign corporation, both (1) sells reinsurance to insurance companies, including insurance companies that are incorporated in the United States or do business in the United States, and (2) purchases reinsurance to protect itself against losses suffered on the reinsurance policies it sells. The former, or first-level reinsurance, is not at issue here. Rather, what is at issue is second-level reinsurance (*i.e.*, "retrocessions") where the purchase and sale of reinsurance occurs outside of the United States between foreign reinsurance companies. Validus seeks refunds only with respect to the excise taxes imposed on nine reinsurance policies that it purchased from wholly foreign insurance companies.

**A.**

According to the parties' joint statement of undisputed material facts, Validus is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda. It is in the reinsurance business, providing insurance to insurance companies. During the relevant period, Validus did not conduct business in the United States. Although Validus does not itself operate in the United States, it sells reinsurance to insurance companies that sell policies covering risks, liabilities, and hazards within the United States.

Validus also buys insurance covering portions of its own reinsurance agreements. Transactions in which a reinsurer buys reinsurance are known as "retrocessions," and the party selling retrocessions is a "retrocessionaire." Section 4371, in subchapter A of chapter 34 of the Internal Revenue Code, taxes premiums on certain policies of insurance and reinsurance issued by foreign insurers. Validus paid the 2006 excise tax under section 4371 on premiums for nine retrocessions, all purchased from foreign retrocessionaires. These policies were

negotiated, executed, and performed outside the United States and are herein referred to as wholly foreign retrocessions.

The Internal Revenue Service ("IRS") determined that Validus owed section 4371 excise taxes on the portions of its 2006 wholly foreign retrocessions relating to underlying U.S. risks. Validus paid the assessed tax, with interest, and timely filed claims for refunds under 26 U.S.C. § 6511, on the grounds that the excise tax did not apply and, alternatively, that if it did, then the tax was unconstitutional. When the IRS did not act on the refund claims within six months, Validus filed suit in the federal district court.

The district court granted summary judgment to Validus, ruling that, under the plain text of section 4371(3), the excise tax reached only reinsurance policies (level one), not retrocessions (level two). *Validus Reinsurance, Ltd. v. United States*, 19 F. Supp. 3d 225, 229 (D.D.C. 2014). The government contends that the district court erred because it focused on section 4371, the provision setting the tax rate, in isolation and as a result "adopted an overly narrow interpretation" of the statutory term "policy of reinsurance," failing to give effect to other relevant statutory text. Appellant's Br. 27. Our review of the grant of summary judgment is *de novo*. *See McCormick v. District of Columbia*, 752 F.3d 980, 986 (D.C. Cir. 2014). Our consideration of a pure legal question of statutory interpretation is also *de novo*. *See United States v. Wilson*, 290 F.3d 347, 352 (D.C. Cir. 2002).

**B**.

Section 4371 of the Internal Revenue Code provides:

> There is hereby imposed, on each policy of insurance, indemnity bond, annuity contract, or policy of reinsurance issued by any foreign insurer or reinsurer,

a tax at the following rates:

**(1) Casualty insurance and indemnity bonds**. 4 cents on each dollar, or fractional part thereof, of the premium paid on the policy of casualty insurance or the indemnity bond, if issued to or for, or in the name of, an insured as defined in section 4372(d);

**(2) Life insurance, sickness, and accident policies, and annuity contracts**. 1 cent on each dollar, or fractional part thereof, of the premium paid on the policy of life, sickness, or accident insurance, or annuity contract; and

**(3) Reinsurance**. 1 cent on each dollar, or fractional part thereof, of the premium paid on the policy of reinsurance *covering any of the contracts taxable under paragraph (1) or (2)*.

26 U.S.C. § 4371 (emphasis added). This is one of four sections in subchapter A of chapter 34 on policies issued by foreign insurers. As relevant, section 4372 provides definitions of "insured" and "policy of reinsurance." *Id.* §§ 4372(d), (f). Two exemptions are provided in section 4373, one for certain amounts "effectively connected with" trade or business within the United States and another for certain indemnity bonds. Section 4374 provides that liability for the excise tax is imposed on both the purchaser and seller when not the United States or its agencies or instrumentalities.

Section 4371 derives from an expansion of the excise tax on foreign insurance enacted during World War II as part of the Revenue Act of 1942 ("1942 Act"), Pub. L. No. 77–753, § 502, 56 Stat. 798, 955–56. The text of the 1942 statute made clear that its purpose was not only to raise revenues during a time of tremendous strain on the national fisc, *see* H.R. REP. NO. 77-2333, at 1–2 (1942), but also to help U.S. insurance companies compete with foreign insurers. The stamp tax of 4

6

cents for each dollar of premium was extended beyond marine and fire insurance policies to all kinds of insurance policies issued to domestic entities and individual residents by foreign insurers. *Compare* 26 U.S.C. § 1804 (1940), *with id.* §§ 1804(a)–(b) (Supp. II 1942). Congress also, for the first time, subjected reinsurance policies to the tax. *Compare id.* § 1804 (1940), *with id.* § 1804(c) (Supp. II 1942). The 1942 Act exempted from the tax policies "signed or countersigned by an officer or agent of the reinsurer in a State, Territory, or District of the United States within which such reinsurer is authorized to do business." *Id.* § 1804(c) (Supp. II 1942); *see also id.* §§ 1804(a)–(b) (Supp. II 1942). In other words, the excise tax did not apply when insurance premiums were subject to U.S. income taxes, *see Neptune Mut. Ass'n, Ltd. of Berm. v. United States*, 862 F.2d 1546, 1549 (Fed. Cir. 1988); 61 CONG. REC. 7180–81 (1921) (discussing the predecessor to § 1804), an exemption carried forward in current section 4373(1). As the 1942 House Committee Report explains, the excise tax thereby "eliminate[s] an unwarranted competitive advantage now favoring foreign insurers." H.R. REP. NO. 77-2333, at 61; *see also* 61 CONG. REC. 7180–81.

## II.

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

### A.

At first glance, the plain text of section 4371 appears to extend the reach of the IRS Commissioner to any casualty and life insurance policy issued by a foreign insurer anywhere in the world. Read in conjunction with the statutory definitions,

however, section 4371's reach is more modest. Applying the definition of an "insured," paragraph (1) of section 4371 taxes premiums paid on casualty insurance and indemnity bonds issued by foreign insurers to domestic entities or individual residents "against, or with respect to, hazards, risks, losses, or liabilities wholly or partly within the United States," *see* 26 U.S.C. § 4372(d)(1); it also taxes premiums paid on such policies issued to nonresident individuals and foreign entities "engaged in a trade or business within the United States," *see id.* § 4372(d)(2). Paragraph (2) taxes only those policies of life, sickness, or accident insurance, or annuity contracts "made, continued, or renewed with respect to the life or hazards to the person of a citizen or resident of the United States." *See id.* § 4372(e). Paragraphs (1) and (2) thus tax only policies issued to persons with residence in, or commercial connections to, the United States, with regard to U.S.-based risks and liabilities.

Paragraph (3) taxes premiums paid on reinsurance policies "covering" such contracts. *Id.* § 4371(3). Section 4372 defines a "policy of reinsurance" to include "any . . . instrument . . . whereby a contract of reinsurance is made, continued, or renewed against, or with respect to, any of the hazards, risks, losses, or liabilities covered by contracts taxable under paragraph (1) or (2) of section 4371." *Id.* § 4372(f). This statutory definition fits awkwardly into paragraph (3): section 4371(3) apparently taxes any "policy of reinsurance" issued with respect to U.S.-based risks and liabilities covered by a contract taxable under paragraph (1) or (2), covering a contract taxable under paragraph (1) or (2). This apparent redundancy is the focus of the parties' dispute.

The parties offer two plausible interpretations of section 4371(3) based on the plain text; one would tax wholly foreign retrocessions, and the other would not. "Cover," the government points out, may be defined as "to put, lay, or spread

something over, on, or before (as for protecting . . .)," "to afford protection or security to," "to afford protection against or compensation or indemnification for," or to "defray the cost of." WEBSTER'S THIRD INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 524 (1993) ("WEBSTER'S"); *see* Appellant's Br. 27–28. The retrocessionaire "covers" the risks insured under the original policy, the government maintains, because the risk of loss is "passed up the insurance chain" from the insured to the insurer, to the reinsurer, and finally to the retrocessionaire. Appellant's Br. 29. Thus, "[r]etrocessions . . . lie over and protect against the risks covered under the original insurance policy." *Id.* at 28. Further, "the retrocessionaire 'affords protection or security to' the original ceding company and the original policy holder by effectively increasing the reserves of the original insurer." *Id.* at 30.

Validus responds that the only relevant definition of "cover" in the insurance context is "to 'afford protection against or compensation or indemnification for.'" Appellee's Br. 15–16 (quoting WEBSTER'S, *supra*, at 524). The plain text of section 4371(3) "imposes tax on reinsurance contracts that cover *other contracts*, not specified *risks*." Appellee's Br. 11. "[U]nder well-settled rules of privity in reinsurance law," Validus explains, the wholly foreign retrocessions "provide indemnity only to Validus, for its liability under the first-level reinsurance policies it issues to direct insurers." *Id.* at 10. Section 4371(3) therefore does not tax Validus's wholly foreign retrocessions, Validus concludes, because the retrocessions do not directly indemnify Validus's policyholders against, and therefore do not cover, the contracts those policyholders sold to the original insured parties — in other words, they do not cover the contracts taxable under paragraphs (1) and (2).

Neither party demonstrates that the word "covering," standing alone, unambiguously should be interpreted according

to that party's preferred meaning. The government's attempt to define "cover" as "to lie over" cannot be supported in the insurance context. The definition of "cover" as "to lie over" refers to one physical object covering another, *see* WEBSTER'S, *supra*, at 524; "cover" has a different meaning when used to refer to an insurance policy, *see id.* An out-of-context definition is no use to a party in support of its interpretation. *See Sw. Airlines Co. v. Transp. Sec. Admin.*, 554 F.3d 1065, 1069–70 (D.C. Cir. 2009); *see also Brown v. Gardner*, 513 U.S. 115, 117–18 (1994). On the other hand, Validus has not demonstrated that "covering" could mean only "*directly* indemnifying or compensating for." The relevant definition of "cover" includes "to afford protection against or compensation or indemnification for." WEBSTER'S, *supra*, at 524. A retrocession *indirectly* "affords protection against or compensation for" an original insurer's contract with its policyholder. *See Transcon. Underwriters Agency, S. R. L. v. Am. Agency Underwriters*, 680 F.2d 298, 299 n.2 (3d Cir. 1982). The reinsurer "assigns" to the retrocessionaire "all or a portion of the risk which [the reinsurer] reinsures." *See id.* Validus points to authorities indicating that most retrocessions do not directly indemnify the original insurer for any losses or give the original insurer any claim against the retrocessionaire. *See Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 76 (2d Cir. 1995); *China Union Lines, Ltd. v. Am. Marine Underwriters, Inc.*, 755 F.2d 26, 30 (2d Cir. 1985); REINSURANCE 9, 20 (Robert W. Strain ed., rev. ed. 1997); H. ERNEST FEER, APPROACH TO REINSURANCE 10–11 (1951); Douglas R. Richmond, *Reinsurance Intermediaries: Law and Litigation*, 29 U. HAW. L. REV. 59, 59 (2006). Even though these sources show that some retrocessions do not directly cover the contracts described in paragraphs (1) and (2), they do not resolve whether Congress intended "covering" as used in paragraph (3) to mean only "directly covering" or "directly and indirectly covering."

Looking beyond the dictionary definition of "cover[ing]," the statutory context does not resolve the interpretation of section 4371(3). The statutory definition of "policy of reinsurance" supports a broad application of the excise tax under section 4371(3). The definition extends, not to policies "covering" other insurance contracts, but to policies "made . . . with respect to" U.S.-based "hazards, risks, losses, or liabilities" covered by another insurance contract. 26 U.S.C. § 4372(f). Even if a retrocession triggered, ultimately, by a U.S.-based loss does not directly "cover" the original contract insuring that loss, it has been made "with respect to" such a loss. *See* XIII THE OXFORD ENGLISH DICTIONARY 732 (2d ed. 1989) (defining "with respect" as "with reference or regard to something" (emphasis omitted)); *cf. Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123, 128–29 (2d Cir. 2001). Validus responds that the "sweeping interpretation" urged by the government is "foreclosed by the statute's structure": "The interplay of the statute's definition of 'reinsurance' and its tax-imposing language shows that Congress defined reinsurance broadly to encompass all policies that relate to underlying U.S. risks, but taxed only those policies that 'cover' casualty and life insurance policies." Appellee's Br. 11.

Indeed, to interpret paragraph (3) to impose the excise tax on all policies of reinsurance issued with respect to risks covered by a contract taxable under paragraph (1) or (2) would be to read the "covering" clause out of the statute. As courts have long acknowledged, "[i]t is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (citation and internal quotation marks omitted). But "such maxims, while often providing useful assistance in interpretation, do not always offer conclusive resolution of statutory ambiguities." *United States v. Stewart*, 104 F.3d 1377, 1387 (D.C. Cir. 1997); *see Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1177 (2013); *Lamie v.*

*U.S. Trustee*, 540 U.S. 526, 536 (2004); *United States v. Hansen*, 772 F.2d 940, 946–47 (D.C. Cir. 1985) (Scalia, J.). This is such a case.

Exempting retrocessions is contrary to a stated congressional purpose that is apparent from the statutory text and context. By providing an exemption in section 4373(1), Congress imposed the excise tax only on the business of insurance companies not already subject to a U.S. income tax. Section 4371, together with section 4373(1), thus operates to level the playing field between domestic and foreign insurance and reinsurance businesses. Validus's interpretation would create a distinction that limits Congress's leveling purpose: The excise tax would not apply where a U.S. reinsurance company purchases a retrocession from a foreign insurer. Because a retrocession is merely another kind of reinsurance, *i.e.*, "reinsurance for reinsurers," REINSURANCE, *supra*, at 19, Validus's interpretation of paragraph (3) would create a distinction between retrocessions and reinsurance issued by foreign entities to domestic insureds that would be at odds with a clear purpose of the statute. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 242–43 (1989); *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982). Just as courts are obligated to avoid construing statutes to create superfluities when possible, so too must they avoid statutory interpretations that "bring about an anomalous result" when other interpretations are available. *Stewart*, 104 F.3d at 1388 (citing *United States v. Bergh*, 352 U.S. 40, 45 (1956)).

Because both parties offer plausible interpretations based on different readings of the statutory text, we conclude the text of section 4371 is ambiguous with regard to its application to wholly foreign retrocessions. This statutory ambiguity is resolved by the presumption against extraterritoriality.

**B.**

"It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC v. Arabian Am. Oil Co.* ("*Aramco*"), 499 U.S. 244, 248 (1991) (quoting *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949)). The Supreme Court has instructed that a court must presume that a statute has no extraterritorial application "'unless there is the affirmative intention of the Congress clearly expressed' to give a statute extraterritorial effect." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (quoting *Aramco*, 499 U.S. at 248). Neither party maintains that retrocessions between wholly foreign parties are not extraterritorial, and the extraterritoriality of the retrocessions at issue is evident from the parties' joint stipulation of material facts. In looking, then, to the statutory text, context, purpose, and legislative history for a "clear indication" of Congress's intent, *Morrison*, 561 U.S. at 265; *see Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1665–68 (2013); *Foley Bros.*, 336 U.S. at 285–88, the court necessarily avoids any case-by-case attempt to "divin[e] what Congress would have wanted if it had thought of the situation before the court" so as to "preserv[e] a stable background against which Congress can legislate with predictable effects," *Morrison*, 561 U.S. at 261 (footnote omitted). The government has identified no clear indication by Congress that it intended the excise tax to apply to wholly foreign retrocessions, and we have found none.

Validus has not challenged the application of the excise tax to the sale of reinsurance to a U.S. insurance corporation or a foreign insurance corporation doing business in the United States. *See* Appellee's Br. 5–6 (citing *American Bankers Ins. Co. of Fla. v. United States* ("*American Bankers II*"), 388 F.2d 304, 305 (5th Cir. 1968)). The government interprets the plain text to rebut the presumption against extraterritorial effect

because it views the excise tax to have *only* extraterritorial effect, applying solely to transactions not "effectively connected with the conduct of a trade or business within the United States," 26 U.S.C. § 4373(1), and involving a foreign insurance company. But even if the excise tax applies to premiums paid by a U.S. insured to a foreign insurer or reinsurer, that does not resolve the issue presented by Validus's refund claims.

The government does not confront the Supreme Court's direction that "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms," *Morrison*, 561 U.S. at 265. The wholly foreign retrocessions at issue are materially different from the reinsurance contracts in which there is privity of contract between the foreign reinsurer and a domestic (U.S.) individual or entity, or entity doing business in the United States. Applying the excise tax to retrocessions between wholly foreign insurers would extend the extraterritorial reach of section 4371 by allowing the tax to compound into perpetuity with the creation of every new reinsurance contract after the first-level reinsurance contract, despite the absence of a contractual or other legal relationship with any U.S. entity. "Under this 'cascading tax' theory, there is no limit to the number of times the United States can collect excise tax on retrocessions, provided they can ultimately be traced back, through any number of intermediate contracts, to U.S.-based risks." Appellee's Br. 7. Although government counsel stated during oral argument that the tax is unlikely to compound to exceed the amount a U.S. reinsurer would have to pay in U.S. income taxes, the possibility of a "cascading" tax so attenuated from any U.S. entity or entity conducting business in the United States nevertheless differentiates the tax the government proposes from that clearly authorized under section 4371. "[C]ourts must find clear and independent textual support — rather than relying on mere inference — to justify the nature and extent of each statutory

application abroad." *Keller Found./Case Found. v. Tracy*, 696 F.3d 835, 845 (9th Cir. 2012) (citing *Morrison*, 561 U.S. at 265).

The government maintains that section 4371(3) should be interpreted broadly in view of the imposition of the tax "on *each* policy of insurance . . . or policy of reinsurance issued by *any* foreign insurer," 26 U.S.C. § 4371 (emphasis added). Yet Congress's use of the words "each" and "any" is not a clear expression of its intent to assert extraterritorial jurisdiction. In *Kiobel*, the Supreme Court rejected an extraterritorial application of the Alien Tort Statute based on such language: "Nor does the fact that the text reaches '*any* civil action' suggest application to torts committed abroad; it is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality." 133 S. Ct. at 1665 (citations omitted); *see also United States v. Ali*, 718 F.3d 929, 935 (D.C. Cir. 2013). The text remains ambiguous; although the government's interpretation is plausible, plausibility does not rebut the presumption against extraterritoriality. *See Aramco*, 499 U.S. at 250–51; *see also Morrison*, 561 U.S. at 264.

Nor is the court persuaded that the statutory text, viewed in context, unambiguously directs the tax on foreign insurance policies to follow the U.S.-based risk, as the government contends. The definition of "policy of reinsurance" includes any policy "made . . . with respect to" U.S.-based "hazards, risks, losses, or liabilities." 26 U.S.C. § 4372(f). In the 1942 Act, the excise tax was imposed directly "[o]n each policy of reinsurance" issued by a foreign party "with respect to[] any of the hazards, risks, losses, or liabilities covered by contracts described." *Id.* § 1804(c) (Supp. II. 1942). When Congress "rearrange[d]" and "simplif[ied]" the excise tax in 1954, S. REP. NO. 83-1622, at 482 (1954) — expanding the definition section and adding the exemption section and the paragraph (3) "covering" clause, *see* Internal Revenue Code of 1954 ("1954

Act"), Pub. L. No. 83–591, 68A Stat. 1, 521–24 — the committee reports state that Congress did not intend any substantive changes. *See* S. REP. NO. 83-1622, at 482; H.R. REP. NO. 83-1337, at A325 (1954). Since the 1954 Act, the excise tax provision has no longer taxed "each policy of reinsurance . . . made . . . with respect to" certain *risks*, 26 U.S.C. § 1804(c) (Supp. II. 1942), only "each . . . policy of reinsurance . . . covering" certain *contracts*, *id.* § 4371(3) (2012). To the extent the principle "follow the risk" underlay the 1942 Act, after the 1954 Act that is no longer certain.

Moreover, even if the 1942 Act had remained unchanged, the text of the 1942 Act did not contain a clear indication that Congress intended to tax wholly foreign retrocessions. In *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655 (1995), the Supreme Court refused "to extend" the term "relate to" "to the furthest stretch of its indeterminacy" to overcome the presumption against federal preemption of state law. Similarly, here, the breadth of the phrase "with respect to" does no more to rebut the presumption against extraterritoriality than do expansive words like "each" and "any."

Nor does the legislative history of the excise tax supply a clear indication that Congress intended the broad interpretation urged by the government. The current version of the tax evolved from an excise tax on property insurance sold by foreign insurers to U.S. residents or corporations. *See* 26 U.S.C. § 1804 (1940). That tax excluded reinsurance and thus could not have applied to any reinsurance transaction between two foreign insurers, much less a retrocession. Reinsurance was added when Congress amended the excise tax in the 1942 Act. *See* 56 Stat. at 955–56. The legislative history is limited. The House Committee Report states: "It is believed that the revised provision will yield an appreciable amount of revenue, and at the same time eliminate

an unwarranted competitive advantage now favoring foreign insurers." H.R. REP. NO. 77-2333, at 61. In Senate Committee hearings, a representative of the House of Representatives Office of Legislative Counsel testified that "[t]he attempt here is to equalize the situation between domestic corporations engaged in casualty and other kinds of insurance and foreign corporations where the insurance is taken out in the United States but the policy is countersigned abroad." *Hearings on H.R. 7378 Before the S. Comm. on Finance* ("*Hearings on H.R. 7378*"), 77th Cong. 121 (1942) (statement of John O'Brien).

This history does not evince an unambiguous congressional intent to apply the excise tax to wholly foreign retrocessions, and some of it points the other way. Because the Internal Revenue Code of 1939 did not apply the excise tax to reinsurance, it is unlikely that Congress intended, without comment, to adopt the expansive interpretation of the 1942 tax that the government maintains was carried forward in the 1954 reorganization. This court has been skeptical of finding major changes in legislation that have passed unremarked upon in the legislative history. *See, e.g.*, *Lamont v. Haig*, 590 F.2d 1124, 1129–30 & n.34 (D.C. Cir. 1978); *Laborers' Int'l Union Local Union No. 1057 v. NLRB*, 567 F.2d 1006, 1012–13 & n.41 (D.C. Cir. 1977). The only relevant indication of Congress's intent in the legislative history of the 1942 Act is the testimony from the House Office of Legislative Counsel that the excise tax was intended to reach "insurance . . . taken out *in the United States*," *Hearings on H.R. 7378*, *supra*, at 121 (statement of John O'Brien) (emphasis added).

Even assuming that applying the excise tax as broadly as possible would serve Congress's purposes to "yield an appreciable amount of revenue, and at the same time eliminate an unwarranted competitive advantage now favoring foreign insurers," H.R. REP. NO. 77-2333, at 61, those purposes are

served by taxing first-level reinsurance, as well as retrocessions purchased by U.S. parties. To conclude that Congress also intended a more expansive application of the tax to wholly foreign retrocessions would require more than general and generic statements of purpose, which enable the court to do only what the Supreme Court has instructed against: attempt to "divin[e] what Congress would have wanted if it had thought of the situation before the court," *Morrison*, 561 U.S. at 261. "'[N]o legislation pursues its purposes at all costs,'" and "[t]he task of statutory interpretation cannot be reduced to a mechanical choice in which the interpretation that would advance the statute's general purposes to a greater extent must always prevail." *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 495 (D.C. Cir. 2004) (quoting *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 408 (D.C. Cir. 1997)); *see also Lamont*, 590 F.2d at 1130. The presumption against extraterritoriality gives this principle particular force.

For the first time, the government on appeal seeks the benefit of judicial deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Fund*, 467 U.S. 837 (1984), to the U.S. Treasury Department's interpretation of the excise tax. Even assuming this argument is properly before the court, *but see Prime Time Int'l Co. v. Vilsack*, 599 F.3d 678, 686 (D.C. Cir. 2010), and that after *Morrison* the presumption against extraterritoriality leaves room for such deference, *but see Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 182 (2d Cir. 2014), the argument is unavailing. To accord deference requires some indication that the agency has considered the effect of the presumption against extraterritoriality, *see Morrison*, 561 U.S. at 272–73; *Keller Found./Case Found.*, 696 F.3d at 846, and the government references none with respect to the administrative rulings on which it relies.

The government also urges the court to construe section

4371 to align with the holdings in *United States v. Northumberland Insurance Co.*, 521 F. Supp. 70 (D.N.J. 1981), and *American Bankers Insurance Co. of Florida v. United States* ("*American Bankers I*"), 265 F. Supp. 67 (S.D. Fla. 1967), *aff'd sub nom. American Bankers II*, 388 F.2d 304. But these cases are either factually distinguishable or lack persuasive force with respect to the presumption against extraterritoriality. In *Northumberland*, the district court upheld the excise tax as applied to premiums paid on reinsurance and retrocessions issued to an Australian insurance company by a Swiss company. 521 F. Supp. at 73–75. Not only was the court presented with different textual arguments than those made here, *see id.* at 76, the court did not address the presumption against extraterritoriality and gave "considerable" deference to the same Treasury rulings on which the government now relies, *id.* at 77 — deference that is inappropriate absent consideration of the presumption. *American Bankers I* and *II* similarly do little to advance the government's interpretation. Those cases addressed whether section 4371(3) applied to policies of reinsurance purchased by *domestic* insurers from foreign reinsurers — policies of a type not at issue in the instant case. *American Bankers I*, 265 F. Supp. at 72. In fact, the Fifth Circuit rejected the interpretation that the tax applied *only* to policies purchased by foreign insurers from foreign reinsurers because that interpretation would have caused section 4371(3) to have *only* extraterritorial effect. Referencing "problems of the reach of congressional taxing power" and "extraordinary problems of tax administration," that court "decline[d] to follow literalism so literally to ascribe such an intent to Congress." *American Bankers II*, 388 F.2d at 305. This holding is in obvious tension with the government's interpretation of section 4371 here.

Upon considering the sources of statutory meaning, we conclude that under "the most faithful reading of the text," *Morrison*, 561 U.S. at 265 (citation and internal quotation marks

omitted), section 4371 does not apply to Validus's wholly foreign retrocessions.  Section 4371 is ambiguous with respect to its application to wholly foreign retrocessions.  Neither the text, context, purpose, nor legislative history provide a clear indication of congressional intent to rebut the presumption against such expansive extraterritorial application. Accordingly, we affirm the grant of summary judgment, albeit on narrower grounds, to Validus on its refund claims.