IN THE SUPREME COURT
OF THE VIRGIN ISLANDS
**FILED**
May 08, 2026 04:07 PM
SCT-Crim-2024-0047
DALILA E. PATTON, ESQUIRE
CLERK OF THE COURT

FOR PUBLICATION

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,**<br>Appellant/Plaintiff, | ) **S. Ct. Crim. No. 2024-0047**<br>) Re: Super. Ct. Crim. No. 0021/0073 (STX)<br>) |
| v. | )<br>)<br>) |
| **TA'JHANIQUE CUMBERBATCH**<br>Appellee/Defendant. | )<br>)<br>) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Jomo Meade

Considered: July 8, 2025
Filed: May 8, 2026

Cite as: 2026 VI 7

BEFORE: **RHYS S. HODGE,** Chief Justice; **IVE ARLINGTON SWAN,** Associate Justice; and **MARIA M. CABRET,** Associate Justice.

ATTORNEYS:

**Sean P. Bailey, Esq.**
Assistant Attorney General
St. Croix, U.S.V.I.
 *Attorney for Appellant,*

**Jeffrey B. C. Moorhead, Esq.**
St. Croix, U.S.V.I.
 *Attorney for Appellee.*

## OPINION OF THE COURT

**SWAN, Associate Justice.**

¶1 Appellant, the People of the Virgin Islands, appeals the Superior Court's August 26, 2024 order, which granted Appellee Ta'Jhanique Cumberbatch's motion to suppress evidence obtained

from a cell phone. Based on this Court's reasoning explicated below, we affirm the Superior

Court's August 26, 2024 order suppressing the cell phone evidence.

## I.     FACTUAL BACKGROUND AND PROCEDURAL POSTURE[1]

¶2     On March 2, 2021, the Virgin Islands Police Department ("VIPD") learned that a person

had suffered gunshot wounds at 151 Carlton in the St. Croix District. Aisha Jules ("Detective

Jules"), a detective employed by the VIPD and assigned to the Criminal Investigative Bureau

Major Crime Unit, travelled to 151 Carlton in the St. Croix District. Upon arrival, Detective Jules

observed Mr. Ian Benjamin, Sr. ("Mr. Benjamin") with a gunshot wound to his face. According

to Detective Jules, Mr. Benjamin informed her that a male and female came to his house and one

of them shot him. Mr. Benjamin was transported to the Juan F. Luis Hospital by ambulance to

receive treatment for his injuries. Detective Jules reported that she subsequently travelled to the

Juan F. Luis Hospital and met with Dr. Bianconi, the attending physician, who informed her that

Mr. Benjamin had received a gunshot wound to his face, neck, and right elbow, in addition to a

bullet wound close to his heart. Unfortunately, before the medical team was able to stabilize Mr.

Benjamin to transport him off island for more critical medical care, he succumbed to his injuries

at approximately 3:08 p.m. the same day.

¶3     While Detective Jules was at the crime scene at 151 Carlton, she observed several holes in

a window and wall located at the western side of Mr. Benjamin's residence. She also observed a

hole located in the front bumper of a silver Kia automobile, which was parked in Mr. Benjamin's

yard. Sergeant D. George, who was also present at the crime scene, collected several spent bullet

casings at the entrance gate to Mr. Benjamin's residence.

---

[1] The facts in this case are taken from the search warrant affidavit.

¶4      Subsequently, the VIPD canvassed the surrounding area to locate and identify witnesses or video recordings. The VIPD detectives located and collected video recordings from several nearby residences and learned that some of the neighbors heard gunshots but saw nothing noteworthy about a shooting.

¶5      Detective Jules reviewed the video recordings that the forensic team retrieved from the surrounding area. In the video recordings, she observed a white/silver sticker on the rear of the passenger side window of a car that drove pass Mr. Benjamin's residence before turning around. On the video, Detective Jules observed the same car, an Acura TL sedan, returning to Mr. Benjamin's residence before disappearing behind a clump of bushes that was contiguous to Mr. Benjamin's residence. Detective Jules further observed a female with a small physique and wearing a light-colored shirt and jeans emerge from behind the same bushes where the car was located, before walking across the street and into Mr. Benjamin's yard. A person appearing to be a tall African American male wearing a black t-shirt and a three-quarter length khaki pants also emerged from behind the bushes and walked to Mr. Benjamin's front gate. The female was observed returning behind the bushes where the Acura TL vehicle was parked. Meanwhile, the African American male raised his hand and appeared to fire several shots at Mr. Benjamin's residence before running to the location of the Acura TL that was parked behind the bushes.

¶6      Upon further investigation, Detective Jules learned that the Acura TL vehicle belonged to a female with a small build by the name of Ta'Jhanique Cumberbatch ("Cumberbatch") who resides at #2 Estate Betsy Jewel and had allegedly been in a relationship with Mr. Benjamin. Upon receipt of this information, Detective Jules and Detective Raheem travelled to #2 Betsy Jewel where they observed a white-colored Acura TL sedan matching the vehicle observed in the videos of the crime scene at 151 Carlton. Detective Jules subsequently contacted Detective Elseworth

*People v. Cumberbatch*
S. Ct. Crim. No. 2024-0047
**OPINION OF THE COURT**
Page 4 of 16

2026 VI 7

Jones ("Detective Jones") of the Virgin Islands Firearm Bureau to determine whether Cumberbatch was authorized to carry a firearm in the Virgin Islands. Detective Jones later confirmed that Cumberbatch was not authorized to carry a firearm and ammunition in the Virgin Islands territory.

¶7  Based on the information obtained from the investigation, Detective Jules applied for a telephonic search warrant on March 5, 2021. Importantly, in support of the March 5, 2021 warrant application, Detective Jules averred that after observing the video footage collected by the VIPD forensic team, she observed:

> a white [Acura] TL [sedan] with Chrome rims and a white/silver sticker on the rear passenger glass [window] drove past Mr. Benjamin's residence and turned around. The [Acura] TL then went back towards the residence and disappeared behind some bushes adjacent to Mr. Benjamin's residence. A small-framed individual, which appeared to be a female wearing a light colored shirt and jeans, emerged from the area where the car went. The individual then walked across the road and into Mr. Benjamin['s] yard. I noticed that the female had what appeared to be a limp. A tall male individual who appeared to be African American wearing a black t-shirt and three quarter [length] khaki pants emerged from where the white [Acura] TL [sedan] appeared to have stopped and walked up the Mr. Benjamin's gate. The female individual then went back towards the vehicle and the male individual pointed and appear[ed] to discharge shots towards Mr. Benjamin's residence then ran back to the vehicle.

(J.A. 37-39.) Based on her observation of the video footage outlined above, Detective Jules believed that probable cause and evidence existed to charge Cumberbatch with murder in the first degree; assault in the first and third degree; carrying firearms open or concealed during the commission of a crime of violence; possession of ammunition; discharging or aiming firearms; and conspiracy and requested in her warrant application that the following be searched: Plot no. 2 Apartment A Betsy Jewel, located in Christiansted, the white Acura TL sedan bearing license plate

*People v. Cumberbatch*
S. Ct. Crim. No. 2024-0047
**OPINION OF THE COURT**
Page 5 of 16

2026 VI 7

CGH-567, guns/firearms; ammunition, firearm cleaning kit(s); gun/firearm; cartridges; gun/firearm manuals; gun/firearm magazine; firearm holster; gun/firearm; paraphernalia, cellphones; electronic tablets; and clothing.

¶8     Superior Court Judge Gallivan granted Detective Jules' request for a telephonic warrant, which was later reduced to writing and filed in the Superior Court with Detective Jules' affidavit on March 5, 2021. The warrant states that probable cause exists for believing there was evidence of first degree murder; first and third degree assault; carrying of firearms openly and concealed during the commission of a crime of violence; discharging a firearm; and conspiracy in violation of specific Virgin Islands Code sections. The warrant authorized the VIPD to search a white Acura TL bearing license plate number CGH 567 for items such as cell phones, any firearm(s) ammunition, firearm cleaning kits, gun manuals; firearm holsters; gun/firearm paraphernalia; any documents relevant to possession of said firearm and/or ammunition; clothing; and other firearm related-items.

¶9     Detective Jules executed the search warrant on the apartment located at #2 Betsy Jewel and on the Acura TL vehicle. During the execution of the warrant, Detective Jules made contact with Cumberbatch and Mr. Sharif Matthew, both of whom matched the physical build and height of the individuals Detective Jules observed in the video footage of the crime scene. Detective Jules further noticed a white Acura TL sedan in the vicinity of the apartment that matched the description of the car she observed in the evidence collected. She also observed a gold Ford Escape with license plate U-61, which had a black fanny pack located on the front seat that appeared to have a hard object inside of it. Also, during the execution of the search warrant on #2 Betsy Jewel, Sergeant B. Alicea of the Virgin Islands Forensic Unit retrieved three cell phones: a rose gold iPhone with a broken screen (serial number 353103102151557), a white iPhone in a brown gel

case (serial number 3548750911984028), and a red iPhone with a cracked screen (serial number

356439104991815).

¶10    On March 10, 2021, Detective Jules applied for an arrest warrant for Cumberbatch based

on the information provided in the March 5, 2021 warrant and information provided by Customs

and Border Patrol that Cumberbatch had purchased a one-way ticket to depart St. Croix on March

11, 2021.  Cumberbatch was subsequently detained and arrested at the airport and later charged in

an eleven-count information with first degree murder, among other charges.

¶11    On March 15, 2021, Detective Jules applied for a second warrant.  In support of the second

warrant of March 15, 2021, Detective Jules included almost all the statements averred in her March

5, 2021 affidavit in support of the prior warrant application and further averred that the following

occurred when she executed the March 5, 2021 warrant on Cumberbatch's Apartment at #2 Betsy

Jewel:

> That I made contact with Ms. Ta'jhanique Cumberbatch and Mr.
> Sharif Matthew whose body build, and height matched the
> description of the male individual in the above-mentioned video. I
> also observed a white Acura TL fitting the description of the one
> viewed on the footage from the scene and a gold Ford Escape
> bearing license plate #U-61. I observed a black fanny pack on the
> front passenger seat of the gold Ford Escape which appeared to have
> a hard object packed inside.
>
> A registration check was conducted on the vehicle bearing the
> license plate #U-61.  The check revealed that said vehicle is
> registered to Sharif Cottle-Matthew.
>
> I made contact with Ms. Matthew via cellphone and she stated that
> she is in the United States, and that she left her vehicle with her
> brother, Sharif Matthew.
>
> I spoke to Mr. Matthew who stated that he and Ms. Cumberbatch
> were at Ms. Cumberbatch's apartment together from 10:30 a.m. to
> approximately to approximately 2:00 p.m. on March 2, 2021. He
> stated that he left and returned at 8:00 p.m., when the police arrived

at the apartment. He also stated that the car was at the apartment with them.

During the search, Sgt. B. Alicea of the Forensic unit retrieved the following cellular phones from the residence located at #2 Betsy Jewel: a rose gold, iPhone with a broken screen, [serial number] 353103102151557; a white iPhone in a brown gel case [serial number] 354875091984028; and a red iPhone, [serial number] 356439104991815.

That the items to be searched are as follows:
  (a)   Firearms
  (b)   Ammunitions
  (c)   Firearm Cleaning Kit(s)
  (d)   Gun/Firearm Cartridges
  (e)   Gun/Firearm Manuals
  (f)   Gun/Firearm Magazines
  (g)   Firearm Holsters
  (h)   Gun/Firearm Paraphernalia
  (i)   Cellphones
  (j)   Electronic tablets
  (k)   Clothing

(J.A. 47-48.) The Superior Court granted Detective Jules a warrant to search the content of three cell phones for call logs, text messages, and emails, photographs and videos, GPS data, and "any evidence used or related to" the commission of the crimes charged.

¶12    Following the initial proceedings and discovery, the Superior Court by order dated May 23, 2024 consolidated this case with the criminal matter pending against Matthew (SX-2021-CR-2014) on identical charges emanating from the same set of facts. On May 23, 2024, Cumberbatch filed a motion to suppress all evidence obtained from the search of the three cell phones, challenging the March 5 and March 16 warrants authorizing the search of their contents. On July 10, 2024, Matthew filed a notice of joinder in Cumberbatch's motion to suppress, and the People opposed these applications. The Superior Court held a hearing on the motion to suppress on July 12, 2024, and granted Cumberbatch's motion to suppress any information obtained from the search

*People v. Cumberbatch*
S. Ct. Crim. No. 2024-0047
**OPINION OF THE COURT**
Page 8 of 16

2026 VI 7

of the three cell phones seized on March 2, 2021. The People filed its notice of appeal on August 9, 2024, for an interlocutory appeal from the Superior Court's order of August 26, 2024,[2] excluding the cell phone evidence, and this appeal ensued.

## II. JURISDICTION

¶13 "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). As a general matter, "the People may not ordinarily appeal an order or judgment in a criminal case." *People v. Murrell*, 56 V.I. 796, 801 (V.I. 2012) (quoting *People v. George*, 49 V.I. 504, 507 (V.I. 2008). However, Title 4 Section 33(d)(2) of the Virgin Islands Code permits an appeal by the Virgin Islands government:

> from a decision or order of the Superior Court suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, the Attorney General conducting the persecution certifies to the Superior Court judge that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding.

The Superior Court's August 26, 2024 order, which memorializes its July 12, 2024 bench ruling excluding evidence, is on appeal. Additionally, the Assistant Attorney General conducting the prosecution certified to the Superior Court judge on August 9, 2024, that this appeal is not taken for purpose of delay and that the evidence sought is a substantial proof of a material fact in the trial. Accordingly, we have jurisdiction over this appeal.

---

[2] As the People explain in the notice of appeal, their appeal is taken from the Superior Court's verbal order granting the motion to suppress, which was issued from the bench following the suppression hearing on July 12, 2024. That ruling was subsequently memorialized in a written order entered on August 26, 2024.

*People v. Cumberbatch*
S. Ct. Crim. No. 2024-0047
**OPINION OF THE COURT**
Page 9 of 16

2026 VI 7

### III.   STANDARD OF REVIEW

¶14   In reviewing the Superior Court's decision to grant a motion to suppress evidence, we review its factual findings for clear error and exercise plenary review over its legal determinations. *Simmonds v. People,* 53 V.I. 549, 555 (V.I. 2010). Additionally, when a case involves our interpretation of the United States Constitution, we apply plenary review. Ordinarily, our review of the Superior Court's decision regarding the admissibility of evidence is reviewed only for abuse of discretion. *Blyden v. People,* 53 V.I. 637, 647 (V.I. 2010), aff'd sub nom. *People v. Blyden,* 437 Fed. Appx. 127 (3d Cir. 2011); *Corriette v. Morales,* 50 V.I. 202, 205 (V.I.2008).

### IV.   DISCUSSION

¶15   The Fourth Amendment of the United States Constitution, applicable to the United States Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954, states that:

> the right of the people to be secured in their persons houses papers and effects against unreasonable searches and seizures shall not be violated, and *no warrant shall issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*

U.S. Const. amend. IV. (emphasis added). "The touchstone of a Fourth Amendment analysis concerning a search or seizure is reasonableness—namely whether a police officer acted reasonably." *People v. Looby,* 68 V.I. 683, 699 (V.I. 2018). Controlling precedent has shown that reasonableness generally requires law enforcement officers conducting a search to discover evidence of criminal wrongdoing to obtain a warrant. *See Brigham City v. Stuart,* 547 U.S. 398, 403 (2006). *See also United States v. Leon,* 468 U.S. 897, 922 (1984) (noting that "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness.")); *Veronia School Dist. 47J v. Acton,* 515 U.S. 646, 653 (1995). To be valid under the Fourth Amendment, a warrant must be issued on the basis of probable cause, which "exists when the facts and circumstance as

to which police have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that evidence of a crime will be found." *United States v. Dion*, 859 F.3d 114, 131-32 (3rd Cir. 2017) (quoting *United States v, Silva*, 742 F.3d 1,7 (1st Cir. 2014); *see also Florida v. Harris*, 568 U.S. 237 (2013)).

¶16    To determine probable, cause a judge or magistrate "must make a practical common sense decision whether given all the circumstances set forth in the affidavit before him . . . there is fair probability that contraband or evidence of a crime will be found in a particular place." *People v. John*, 52 V.I. 247, 255-56 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 277 (3rd Cir. 2006)). In other words, the duty of the judge or magistrate presented with an application for a warrant is tasked with the duty "to make [a] practical common sense decision whether, given all the circumstances set forth in the affidavit . . . . there is a fact probability that contraband evidence of a crime will be found in a particular place." *United States v. Brown*, 828 F.3d 375, 381 (3rd Cir. 2016) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A warrant authorizing a search, "must be supported by probable cause particularized with respect to that person." *United States v. Shields*, 458 F.3d 269, 277 (3d. Cir. 2006) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1975)).

¶17    The constitutional requirement that an officer must have probable cause to search a person barring exigent circumstances extends to cell phones. In *Riley v. California*, 573 U.S. 373 (2014), the United States Supreme Court was presented with the issue of whether the police may, without a warrant, search digital information on a cell phone seized from an individual that has been arrested. In its determination of the issue, the Supreme Court noted that the modern cell phone is like a "minicomputer that also happens to have the capacity to be used as a telephone" and that modern cell phones "could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Id.* at 393. The Court

also noted that "modern cell phones are not just another technological convenience [but] [w]ith all they contain and all they may reveal, they hold for many Americans the privacies of life," making it fundamentally different from other physical personal objects belonging to an individual. *Id.* at 403. Because a cell phone holds so much private information regarding an individual and because the search of a cell phone could give the police or the government more than the most thorough and exhaustive search of a house, the Supreme Court noted that cell phones should be treated differently from other objects seized in the search incident to arrest context. Accordingly, the Court held that police officers must generally obtain a warrant to search a cell phone seized incident to an arrest or that police officers must not search the digital contents of a cell phone seized during an arrest without a warrant. *Id.*

¶18    Cumberbatch argues strongly that the warrants issued by the judicial officers in this case lacked probable cause to support the seizure of her cell phones, that the government seizure of the cell phones is therefore illegal, and that this Court should affirm the Superior Court's correct determination that the cell phone evidence should be stricken. We agree.

¶19    For cell phones, the Fourth Amendment requirement that search or seizure must be supported by probable cause cannot be bypassed merely by noting that there happens to be probable cause to search or seize someone or to search the location where the individual may be present. *See id.* Essentially, "there must . . . be a nexus between the place to be searched and the evidence sought." *Brown*, 828 F.3d at 381 (quoting *Gates*, 462 U.S. at 238); *see also United States v. Bass*, 786 F.3d 1043, 1049 (3rd Cir. 2015) (noting that search is justified under the Fourth Amendment when the circumstances indicate that evidence of an illegal activity will be found in a particular place.). Accordingly, the affidavit of any affiant must establish a nexus between the place to be searched and the things to be seized, such that there is a substantial basis to believe that

*People v. Cumberbatch*
S. Ct. Crim. No. 2024-0047
**OPINION OF THE COURT**
Page 12 of 16

2026 VI 7

the things to be seized will be found in the place searched." *Bass*, 785 F.3d at 1049 (quoting

*Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010)).

### The March 5 and March 16, 2021 Warrants Lacked Probable Cause to Justify a Search of the Cell Phone Seized.

¶20    In determining whether a search warrant is supported by probable cause, this Court

"reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality

of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding

that probable cause existed." *United States v. Cooper*, 654 F.3d 1104, 1124 (3rd. Cir 2011)

(quoting *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001)). There is a lack of probable

cause to search Cumberbatch's cell phones for the crimes charged because Detective Jules'

affidavit presented the magistrate with no substantial basis to believe such evidence existed on

Cumberbatch's cell phones. It is obvious that—at the time the warrant was issued—no probable

cause existed to believe that evidence of the crimes charged would be found on Cumberbatch's

cell phones. An exhaustive review of the record, specifically the affidavit submitted in support of

the warrant application, provides no supporting factual allegation—hearsay or otherwise—that

Detective Jules observed Cumberbatch in possession of or using a cell phone during the

commission of the crimes charged. Here, the warrant application or affidavit does not provide a

reasonable basis for the warrant to seize and search the defendant's cell phones.

¶21    Here, the affidavit outlined that upon viewing the video footage gathered from the

investigation. Cumberbatch was observed walking from where her car was parked behind the

bushes to Mr. Benjamin's house before shortly returning to the car. Detective Jules' affidavit also

stated that shortly after Cumberbatch returned to where the car was parked behind the bushes, a

male individual approached Mr. Benjamin's home and appeared to discharge gun shots. Ms.

*People v. Cumberbatch*
S. Ct. Crim. No. 2024-0047
**OPINION OF THE COURT**
Page 13 of 16

2026 VI 7

Cumberbatch was identified based on a slight limp in her stride and her car was identified by the distinct sticker that was placed on it. Detective Jules also identified Sharif Matthew as the male individual who appeared to discharge a firearm in the direction of Mr. Benjamin's home. Critically, according to the affidavits that Detective Jules provided in the warrant application, there was no information or evidence that a cell phone was used in the crime for which Cumberbatch was charged, nor was there a claim that a cell phone (whether belonging to the defendant, or to anyone else) as a matter of evidence contained specific evidence of the crimes. At no time did Detective Jules' affidavit describe the use of any cell phone, state that she observed any cell phone use, or aver that Cumberbatch or Matthew used or possessed a cell phone during the alleged crime. In essence, Detective Jules' decision to seize Cumberbatch's cell phone was unreasonable and based on her unsubstantiated and unsupported belief, i.e., a mere "hunch," that a cell phone in Cumberbatch's possession was likely to have evidence related to the murder of Mr. Benjamin. However, this belief does not satisfy the nexus requirement for probable cause to seize any of her cell phones. This conclusion is based on the fact that the affidavit provided no substantial basis to conclude that Cumberbatch used any cell phone in the murder of Mr. Benjamin and that it was unreasonable, without particularized supporting information, to expect that one or more of her cell phones would contain related or relevant evidence of first degree murder. More succinctly, Detective Jules' affidavit failed to aver that the cell phones seized likely contained evidence of the crimes for which Cumberbatch was charged. A Fourth Amendment search is justified when the surrounding circumstances clearly confirm that evidence of an illegal activity will be found in a particular place. *Gates*, 462 U.S. 238. Accordingly, "[t]he affidavit must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Bass*, 785 F.3d at 1049.

Based on the affidavit of Detective Jules, there was no fair probability that contraband or evidence of a crime would be found on Cumberbatch's cell phones that were seized or that a search of the cell phones would produce evidence of Cumberbatch's wrongdoing. "Sufficient information must be presented to the magistrate to allow [the magistrate] to determine probable cause; his action cannot be a mere ratification of the bare conclusion" of the individual applying for a search warrant. *Gates*, 462 U.S. at 239.

### B.       The Good Faith Exception Does Not Apply.

¶22    The exclusionary rule precludes the use of evidence in a criminal proceeding obtained in violation of the Fourth Amendment. *See Illinois v. Krull*, 480 U.S. 340, 347 (1987). "If the evidence was 'obtained in objectively reasonable reliance on the 'subsequently invalidated search warrant,' however, it should not be suppressed." *Brown*, 828 F.3d at 385 (quoting *Leon*, 468 U.S. at 922). For this exception to apply, "the affidavit must contain a minimally sufficient nexus between the illegal activity and the place to be searched" *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). A law enforcement officer does not manifest objective good faith in relying on a warrant if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Carpenter*, 360 F.3d at 595. Here, the exclusionary rule does not apply because there is no probable cause established to search the cell phones and accordingly there could be no good faith reliance on the March 5, and March 16, 2021 warrants.

¶23    The People argue that Cumberbatch lacks standing to challenge the use of data evidence obtained from the search of Sharif Matthew's cellphone. Specifically, the People argue that because the phone belonged to Matthew, its search did not implicate Cumberbatch's Fourth Amendment rights and Cumberbatch's motion to suppress was improper.

¶24 A defendant generally cannot assert Fourth Amendment rights on behalf of a third-party. "Fourth Amendment rights are personal rights are personal rights which . . . may not be vicariously asserted." *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (collecting cases). However, the facts here are distinguishable. In this case, Cumberbatch seeks to suppress the evidence from Matthew's cell phone based on the unconstitutional search and seizure that occurred within the curtilage of her own home. This demand is on behalf of her own rights—not Matthew's.

¶25 It is well-established that individuals have an expectation of privacy within their private residences. *See Simmonds v. People*, 53 V.I. 549, 555 (V.I. 2010) (citing *United States v. Karo*, 468 U.S. 705, 714 (1984)). Whenever law enforcement officers enter an individual's private residence or exceed the scope of a warrant, that individual has standing to suppress any evidence that arises from either the entry or seizure of any item regardless of ownership. *See United States v. Jeffers*, 343 U.S. 48, 51 (1951) (finding that a hotel guest had standing to object to a seizure of items in their hotel room not belonging to them).

¶26 In this case, even though the phone belonged to Matthew, since seizure of the phone occurred in Cumberbatch's private residence where she had a constitutionally protected right of privacy, she has standing to suppress both the search of her home and the seizure of Matthew's cellphone from within its curtilage. The Superior Court expressed a similar sentiment on this issue, stating during the hearing on the motion to suppress they were concerned whether the initial seizure of the phone or the electronic device was constitutional.

¶27 Therefore, the Superior Court properly considered Cumberbatch's motion to suppress as the seizure of the cellphone directly impacted her Fourth Amendment rights.

*People v. Cumberbatch*
S. Ct. Crim. No. 2024-0047
**OPINION OF THE COURT**
Page 16 of 16

2026 VI 7

## V. CONCLUSION

¶28    Because there was no probable cause established for the cell phone search and no nexus that connected the cell phones to Cumberbatch's alleged crimes, we cannot conclude that the Superior Court abused its discretion in suppressing the cell phone or the information it contained as evidence in this proceeding.    Therefore, we affirm the Superior Court's August 26, 2024 order suppressing evidence obtained from the search of the cell phones.

**DATED this 8th day of May, 2026.**

**IVE ARLINGTON SWAN**
**Associate Justice**

**ATTEST**

**DALILA E. PATTON, ESQ.**
**Clerk of the Court**

**By:**    /s/ Jahkyda Coakley

   **Deputy Clerk**

**Dated:** May 8, 2026